STATE, *ex rel.* F. M. CAMPBELL, v. D. H. SLOAN, JR., as
Clerk of the Circuit Court, Polk County.

184 So. 781.
Division A.
Opinion Filed November 28, 1938.

*Willson & Martin,* for Relator;

*Touchton & Crittenden* and *Carver & Langston,* for Respondent.

*Evans, Mershon & Sawyer, Thos. McE. Johnston* and *W. E. Dunwody, Jr.,* as *Amici Curiae.*

BUFORD, J.—This is an original proceeding in mandamus. The material allegations of the alternative writ are:

"That heretofore, to-wit, on the 7th day of July, 1930, the Tax Collector of Polk County, Florida, sold to the State of Florida, the following described lands in Polk County, to-wit:

"West One-half (W½) of Lot Three (3) of W. J. HOWEY LAND COMPANY SUBDIVISION in Sections 14, 15, 22 and 23, Township 29 South, Range 27 East, for the nonpayment of taxes assessed against it for the year 1929, and issued to the State of Florida, in pursuance of such sale, Tax Certificate No. 11585, for the year 1930.

"IV. That in and by Chapter ·18296, Laws of Florida, 1937, it is provided as follows:

" 'That it shall be the duty of any Clerks of Circuit Courts of the State of Florida, having custody or control of any tax certificates held by the State of Florida, that are more than two years old, to offer such certificates together with all subsequent, omitted or levied taxes, for sale at public outcry to the highest and best bidder for cash, when written request is made by any person for such sale, such written request to give description of land covered by such certificate sought to be purchased.'

"V. That at the time the aforesaid Act was passed, Tax Sale Certificate No. 11585 was held by the Respondent for the State of Florida, and was more than two years old, and it was the duty of said Respondent to sell the same, upon

written request by any person, under said Chapter 18296, to the highest and best bidder for cash.

"VI. That the petitioner duly made a request in writing to you, the said D. H. Sloan, Jr., as Clerk of the Circuit Court of Polk County, Florida, under the provisions of Chapter 18296, Laws of Florida, 1937, to advertise said Tax Sale Certificate No. 11585, for sale, in pursuance of the terms and provisions of said Chapter 18296.

"VII. That you, the Respondent, in pursuance of said request of the Relator, and having complied with all of the requirements of said Chapter 18296, did, on the 18th day of January, 1938, offer for sale, the aforesaid certificate, and the same was purchased by the Relator, he having been the highest and best bidder for cash.

"VIII. That thereafter, the Relator demanded of you, the Respondent, that you deliver to him the aforesaid certificate, but you, the said Respondent, failed and refused to do so.

"IX. That Relator being the highest and best bidder for cash of said certificate, and you the said Respondent having sold the same to him, it was and is the duty of you, the Respondent, to deliver said certificate to Relator."

The return to the alternative writ alleges:

"That he admits that on or about the 7th day of July, 1930, the Tax Collector of Polk County, Florida, sold to the State of Florida, the following described land lying in Polk County, Florida, to-wit: West One-half (W½) of Lot Three (3) of W. J. HOWEY LAND COMPANY SUBDIVISION in Sections 14, 15, 22 and 23, Township 29 South, Range 27 East, for the non-payment of taxes assessed against it for the year 1929 and that he issued to the State of Florida Tax Sale Certificate No. 11585 for the year 1930.

"This respondent further says that the above mentioned

lot lies within the Peace Creek Drainage District; that such drainage district is located wholly within the limits of Polk County, Florida. That it is a corporation organized and existing under the provisions of Chapter 6458, Laws of Florida, Acts of 1913, and was organized over twenty years ago.

"This respondent further says that on account of certain work and improvements made by the Peace Creek Drainage District and its supervisors, in accordance with the provisions of Chapter 6458 of the Laws of Florida, Acts of 1913, there was assessed against various pieces of property in the said District, including the above mentioned tract of land, the amount of benefit that accrued to each government lot, forty acre tract or other subdivision of land in accordance with the provisions of Chapter 6458, Laws of Florida, Acts of 1913.

"That by Chapter 13721, Laws of Florida, Acts of 1929, it is provided among other things:

" 'That the Peace Creek Drainage District of Polk County, Florida, by its Board of Supervisors, is hereby authorized, empowered and required to determine, order and levy upon all of the lands within said District against which benefits have been assessed in each year, beginning with the year 1929, all drainage taxes of said District falling due within said year, including the amount of the annual installments of the aggregate total taxes levied by the said Board of Supervisors in accordance with law to pay the costs of completion of the proposed work and improvements as shown in the plan of reclamation of said District, and to carry out the objects of said District and to pay the principal and interest of the bonds which have been or may hereafter be, lawfully issued by said District, and including drainage taxes levied for all other purposes authorized by Sections 1467, 1493 and 1500, Compiled General Laws of Florida,

1927, and likewise including maintenance taxes as provided for in Section 2 of this Act and all other drainage taxes levied in accordance with law.'

" 'To maintain and preserve the ditches, drains and other improvements in said Peace Creek Drainage District, and to repair and restore the same when needed, and for the purpose of defraying the current expenses of the District the Board of Supervisors shall in each year beginning with the year 1929, levy a tax upon each tract or parcel of land within the District against which benefits have been assessed, to be known as a Maintenance Tax. Said Maintenance Tax shall be apportioned upon the basis of the net assessments of benefits assessed in accordance with law, shall not exceed in any one year ten per cent. of said benefits assessed.'

" 'It shall be the duty of the Board of County Commissioners of Polk County, Florida, to order the Tax Assessor of said County to assess, and the Tax Collector of said County to collect the amount of the annual installment and maintenance tax levied upon the lands within said District, as the same shall be certified by the Board of Supervisors of said Peace Creek Drainage District.'

" 'It shall be the duty of the Tax Assessor of said County to assess against each tract of land within said District, against which benefits have been assessed, as the same is certified to him each year, the taxes so levied and certified by said Board of Supervisors as hereinabove provided, and to extend the total of said taxes upon the assessment roll in a column for that purpose, and said levy shall be included in the warrant of said Tax Assessor attached to the assessment roll of taxes for said Polk County for each year.

" 'It shall be the duty of the Tax Collector of Polk County to collect such taxes so levied and assessed, in the same manner and at the same time as State and County taxes

are collected, and he shall pay the same to the Treasurer of said District, within the time prescribed for the payment over of State and County taxes.'

" 'All taxes levied and assessed as hereinabove provided for shall be due and payable on the first day of November next after the same are assessed, and shall become delinquent if not paid on or before the first day of April next after the assessment thereof, and shall thereafter bear the same penalties and the payment thereof be enforced by the Tax Collector of Polk County and/or the Clerk of the Circuit Court of Polk County and/or the Comptroller of the State of Florida in the same manner and at the same time as the payment of State and County taxes upon said land is enforced.'

"This Respondent further says that for the year 1929 there was levied against the above described lot by the Board of Supervisors of the Peace Creek Drainage District an annual tax for the purpose of paying for the improvements made in said District and a tax for the maintenance thereof in the sum of $30.00.

"That the said levy of taxes required to be made by the Board of Supervisors under and by virtue of the provisions of Sections 1 and 2 of Chapter 13721, Laws of Florida, Acts of 1929, were evidenced and certified in the name of Peace Creek Drainage District by its President and Secretary and under its corporate seal, to the Tax Assessor of Polk County, Florida, the Board of County Commissioners of Polk County Florida, and the Comptroller of the State of Florida, in conformity with the provisions of Section 3 of Chapter 13721, Laws of Florida, for the year 1929. That the Board of County Commissioners of Polk County, Florida, did in conformity with the provisions of Section 4 of the above mentioned law, order the Tax Assessor of Polk County, Florida; to assess and the Tax Collector of

said County to collect the amount of annual installment and maintenance tax levied upon the lands within said District, including the land involved in this suit, in conformity with the provisions of such law; that thereupon the Tax Assessor of Polk County, Florida, did assess the tract of land involved in this suit, along with other lands within the said District against which benefits had been assessed and did extend the total of said tax upon the assessment roll in the column provided for the purpose, as will be more fully shown by a copy of the said assessment roll in so far as the land involved in these proceedings is concerned, which copy is hereto attached and made a part hereof. That none of the taxes, including the drainage taxes assessed against the lot in question, were paid by the owner thereof or by anyone whatsoever and that on the 7th day of July, 1930, the Tax Collector of Polk County, Florida, sold to the State of Florida the above described land for the non-payment of the aforesaid State, County and Drainage taxes for the year 1929, and issued to the State of Florida, in pursuance of such sale tax sale certificate No. 11585 for the year 1930, as will be more fully shown by a copy of said tax sale certificate, which copy is hereto attached and made a part of this return. This respondent further says that the State of Florida as an outgrowth of such sale acquired the title to such certificate in so far as the drainage taxes therein included are concerned, in trust for such Drainage District.

"4. That this respondent admits that at the time Chapter 18296, Laws of Florida, Acts of 1937, was passed and approved that the said Tax Sale Certificate No. 11585 which included within its aggregate amount $30.00 assessed for the use and benefit of the Peace Creek Drainage District, was held by this respondent; that inasmuch as the said tax sale certificate included within its aggregate amount the sum of $30.00 for the use and benfit of such Drainage Dis-

trict, this respondent denies that it was his duty upon the written request ·of any person to sell ·the said certificate evidencing not only the amount of the State and County *ad valorem* taxes, but also the amount of the drainage taxes or assessments included therein, unless and until the said drainage tax was paid in full or otherwise adequately safeguarded.

"5. That this respondent admits that the relator made a request in writing to him as such Clerk under the provisions of Chapter 18296, Laws of Florida, Acts of 1937, to advertise the said Tax Sale Certificate No. 11585 for sale, in pursuance of the terms and provisions of said Chapter 18296, Laws of Florida; that this respondent at the time of the making of such request informed the relator that although he would advertise the said certificate in so far as the usual State and County *ad valorem* taxes are concerned, that none the less he could not legally and would not consummate any sale of such certificate unless and until the purchaser at such sale pay in full the amount due the Peace Creek Drainage District on account of the taxes it owed which were included in the said certificate as aforesaid.

"6. That this respondent in compliance with such request did offer for sale, subject, however, to the payment in full of the Peace Creek Drainage District tax; that the relator at such sale made the highest and best bid for such certificate; that the said relator failed, neglected and refused to pay to this respondent the said drainage tax included in the said district and that thereupon this respondent refused to deliver to him, the said relator, the said certificate.

"7. Further answering the said alternative writ of mandamus this respondent says that the aggregate value of the State, County and Drainage District taxes for the year 1929 amounts to $71.30; as will be more fully shown by a copy

of a portion of the said tax roll for the year 1929; that the amount of drainage taxes belonging to such District and included in the $71.30 is $30.00; that the face value of the said certificate is $71.31, as will be more fully shown by reference to a copy of the same which is hereto attached and made a part hereof; that the said $75.31 represents and evidences the State, County and drainage taxes for the year 1929 together with all costs and expenses incident to the sale of such certificates; that while it is the duty of this respondent to sell under the provisions of the Act known as the Murphy Act tax certificates more than two years old at the time of the passage and approval of the Murphy Act which represent and include only State and County taxes, none the less this respondent says that the provisions of the said Murphy Act are not broad enough to include and do not include and provide for the sale of tax certificates held in the name of the State of Florida which evidence either in whole or in part special assessment taxes due the Drainage District, which District is vitally interested in the handling of such certificates, and which District although it is interested in the subject matter of these proceedings is not made a party thereto.

"8. Further answering this respondent says that during the years 1930, 1931 and 1932 there was levied against the above described lot by the Board of Supervisors of the Peace Creek Drainage District an annual tax for the purpose of paying for the improvements made in said District and the maintenance of such District; that for the years 1936 and 1937 there was levied against the above described lot by the Board of Supervisors of the Peace Creek Drainage District an annual tax for the purpose of maintaining such District; that the said levies of taxes for each of the above mentioned years required to be made by the Board of Supervisors under and by virtue of the provisions of

Sections 1 and 2 of Chapter 13721, Laws of Florida, were evidenced and certified in the name of the Peace Creek Drainage District by its President and Secretary and under its corporate seal to the Tax Assessor of Polk County, Florida, the Board of County Commissioners of Polk County, Florida, and the Comptroller of the State of Florida, in conformity with the provisions of Section 3 of Chapter 13721, Laws of Florida, for the year 1929; that the Board of County Commissioners of Polk County, Florida, did in conformity with the provisions of the Act in question, order the Tax Assessor of Polk County, Florida, to assess and the Tax Collector of said County to collect the amount of annual installment for maintenance taxes levied upon the property and the amount of the annual taxes levied upon the lands in said district, including the land involved in this suit, in conformity with the provisions of such law; that thereupon the Tax Assessor in each of said years did assess the tract of land involved in this suit, along with other lands within said District, against which benefits had been assessed and did set forth such assessment upon the tax assessment rolls in a column provided for that purpose; that during the years 1933, 1934, and 1935 there was levied against the above described lot by the Board of Supervisors of the Peace Creek Drainage District an annual tax for the purpose of paying for the improvements made in said District and a maintenance tax for the maintenance thereof, but the said levies for such years were not turned over by the Board of Supervisors to the Tax Assessor and others in conformity with the provisions of Chapter 13721, Laws of 1929, but were by order of Court turned over to a Receiver appointed by the Court for such purpose.

"That for the years 1936 and 1937 there was levied against the above described lot by the Board of Supervisors of the

Peace Creek Drainage District an annual tax for the purpose of paying for the bonded indebtedness outstanding in said District; that the said levy was not turned over to the Tax Assessors and others in conformity with the provisions of such Act, but were turned over under and by virtue of an order of the Circuit Court of Polk County, Florida, to a Receiver appointed by the Court for said purpose.

"This respondent further says that none of the maintenance taxes, improvement taxes or debt service taxes mentioned in this paragraph or any part thereof have been paid and that the relator is seeking in connection with the purchase of tax certificate No. 11585 to acquire each of such taxes without paying anything for them other than the amount that he bid for the purchase of the tax certificate in question."

Motion for the writ, notwithstanding return, was filed. This motion admits all the allegations of the return which are well pleaded. The return is sufficient to show that the relator is not entitled to have an assignment of all that is contained in the tax sale certificate numbered 11585.

Chapter 18296, Acts of 1937, applies only to tax sale certificates for delinquent State and County taxes and the provisions of that Act do not apply to drainage district taxes, regardless of the mechanics by which drainage district taxes are levied and assessed and, therefore, the provisions of Chapter 13721, Acts of 1929, are not effective to make the drainage district tax a part of the State and County tax. While that Act, the pertinent provisions of which are above quoted, did provide:

"It shall be the duty of the Tax Collector of Polk County to collect such taxes so levied and assessed, in the same manner and at the same time as State and County taxes are collected, and he shall pay the same to the Treasurer of

said District, within the time prescribed for the payment over of State and County taxes.

· "All taxes levied and assessed as hereinabove provided for shall be due and payable on the first day of November next after the same are assessed, and shall become delinquent if not paid on or before the first day of April next after the assessment thereof, and shall thereafter bear the same penalties and the payment thereof be enforced by the Tax Collector of Polk County and/or the Clerk of the Circuit Court of Polk County and/or the Comptroller of the State of Florida in the same manner and at the same time as the payment of State and County taxes upon said land is enforced," it did not authorize, or purport to authorize the Tax Collector to include the drainage district tax in a tax sale certificate embracing the State and County taxes and the inclusion of State and County taxes and the drainage district tax in one tax sale certificate could not affect either the rights of the drainage district or of the State and County.

The provisions of the last paragraph above quoted from Chapter 13721, *supra*, are sufficient to require that tax sales for delinquent drainage district tax may be held and conducted by the several officers named, in the same manner and at the same time that tax sales are made and conducted for the delinquent State and County taxes, but this does not mean that they should all be included in one and the same transaction and the lien arising from the sale evidenced by one and the same tax sale certificate. Under these provisions, there should have been a separate sale for the delinquent county and State taxes and another for delinquent drainage district tax and separate certificates should have been issued evidencing the lien arising from each of such levies and sales, respectively. That this was not done will not vitiate the sale nor will it destroy the lien created by

operation of law on the lands assessed for either of such purposes. Each of the liens is made by law of equal dignity.

Under the allegations of the return, the relator is entitled to have an assignment from the respondent of the lien evidenced by the tax certificate which exists by reason of the non-payment of the taxes for State and county purposes as evidenced by the certificate, but is not entitled to have the certificate embracing the delinquent drainage district tax assigned to him except upon payment of all the delinquent drainage district tax in addition to the amount bid for the State and county certificate, with costs.

This conclusion is necessary to give effect to Section 20 of Article III of the Constitution and to comply with Section 1119 R. G. S., 1472 C. G. L.

It, therefore, follows that the motion for peremptory writ of mandamus, notwithstanding the return, must be denied. The return is held sufficient and the alternative writ quashed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.