JULIA HENDERSON, as Substituted Trustee Under the Last Will and Testament of PARKER A. HENDERSON, Deceased, v. W. R. BOOSE, *et ux,* J. M. HOLFERTY, *et ux.,* A. B. THOMPSON, *et ux.,* E. J. TAINTOR, *et ux.,* and E. B. LEATHERMAN, as Clerk of Circuit Court of Dade County.

196 So. 671
Division B
Opinion Filed August 1, 1939

*Murrell & Malone,* and *J. H. Mercer,* for Appellant;

*Thomas B. Everhart* and *J. M. McCaskill,* for Appellees.

BROWN, J.—This is an appeal from a final decree dismissing plaintiff's bill in which decree was embraced an order overruling the exceptions to the master's report. The case was tried upon the second amended bill of complaint filed by Mrs. Julia Henderson as substituted trustee under the will of Parker A. Henderson, deceased, and the answer of the several defendants.

The amended bill of complaint alleges that the plaintiff, who was the widow of Parker A. Henderson, deceased, has been substituted as trustee of the estate of her deceased husband in lieu of the First Trust & Savings Bank of Miami; that among the assets of the estate was a mortgage given to Parker A. Henderson covering the land described in the bill of complaint; that said mortgage had been duly foreclosed and a master's deed delivered to the First Trust & *Svaings* Bank as Executor and Trustee of the said Henderson estate and thereby the fee simple title then derived became an asset of said estate. That during the time the said bank was acting as executor of said estate it employed defendant J. M. Holferty as its agent for the purpose of renting and caring for the lands which the said bank had under its control as such executor. That during the time said Holferty was acting as such agent he acquired from the bond trustees of Goulds Drainage District certificate No.

12 for the tax assessment for 1929; that he took said tax certificate in the name of W. R. Boose; that subsequently he applied for and obtained an alleged tax deed from the said bond trustees of said district and that said deed was issued to W. R. Boose, "c/o J. M. Holferty.' That Holferty had stated to plaintiff and to said bank that he was holding said certificate for them and they could reimburse him therefor at their convenience. It is further alleged in said bill that W. R. Boose was a relative and "straw man" of the said J. M. Holferty; that his name was used in said transaction to conceal the real purchaser of the tax sale certificate, which purchase was really made by Holferty while acting in the capacity of agent of the First Trust & Savings Bank, the executor, and was acting in a fiduciary capacity for them.

In separate paragraphs the amended bill alleges in detail the procedure in connection with the sale and issuance of said tax certificate and the subsequent issuance of tax deed for said property.

The bill alleges that Holferty was and is indebted to the estate of said Parker A. Henderson for rents collected from said lands, and that the estate is indebted to Holferty for the drainage taxes which had been paid by him, and that plaintiff is ready and willing after an accounting between the parties to pay to the said Holferty any amount found by the court to be due him, and that in the event any money should be found to be due by Holferty to the estate, that such indebtedness be ordered paid to the estate. The bill prays for the cancellation of tax certificate No. 12, the cancellation of the alleged tax deed and the cancellation of all subsequent debts and encumbrances placed by the parties against said lands. The bill prays for an accounting between the parties and an adjustment of accounts existing.

To this amended bill the defendants severally filed motions

to strike portions thereof, all of which motions were denied by the chancellor. The defendants thereupon filed separate answers to the bill. In his answer Holferty denied any agency or fiduciary relationship on his part, denied that he was indebted to the estate, affirmed that the tax sale certificate and tax deed were all legal. Defendants Thompson and Taintor in their answer alleged that they had purchased the land from Holferty for the sum of $4,200.00 receiving from Holferty and his wife a special warranty deed dated September 27, 1934, and recorded November 14, 1934; that such purchase was made in good faith and without any notice or knowledge that the plaintiff claimed any right, title or equity therein; that they had paid all of the purchase money notes except the last one in the sum of $1,312.50 which was not due until October, 1936, and that they had also paid out certain sums for redeeming certain taxes on said lands as well as for the taxes for the year 1936. In the answer filed by Boose and Holferty it is alleged that before the assignment of the tax certificate and the issuance of the tax deed, both the plaintiff and said bank as executor of the estate of Parker A. Henderson had knowledge of the delinquent taxes on said property and that the taxes for the year 1929 were unpaid and elected not to pay said taxes but to abandon the land; that they also had knowledge of the issuance of the tax certificate, its purchase by Boose and that Boose had made application for tax deed, and yet made no complaint or objection; that said lands had not been actually possessed, farmed or used for a period of several years before Holferty took possession thereof; that when tax deed was issued, the land was wild, unoccupied and uncultivated and had but little value, that the value of the land had been greatly increased by the expenditure of some $2,500.00 by Holferty and Boose for the purpose of clearing and cleaning the property and making it other-

wise usable; and that it would be inequitable and unjust to allow plaintiff to now become entitled to possession of said land and that she should be held to be estopped to claim such title and possession.

Hon. Norris McElya was appointed by the court as special master and we quote as follows from his report, which we think gives a very fair summary of the facts in the case:

"The 105 acres of land involved in this litigation comprise one of three tracts of land in the south end of Dade County which the First Trust & Savings Bank as Executor of the Estate of the late Parker A. Henderson acquired by the foreclosure of mortgages. Julia Henderson, the widow of Parker A. Henderson, qualified as Trustee of the Estate of Parker A. Henderson. J. M. Holferty was a real estate agent located in the south end of the county who acted as rental and sales agent and consultant for the Executor in connection with this tract of land and two other tracts known as the 80 and 60 acre tracts, but so far as the record shows did not actually sell or lease the 105 acres.

"Holferty owned or controlled some Goulds Drainage tax certificates on the 60 and 80 acre tracts, and agreed with the Executor that he would not enforce the payment of same until funds were available in the estate from the rental thereof. Mrs. Henderson as Trustee was under the impression that the same situation existed in reference to the 105-acre tract, but it does not appear that the Executor had any understanding with Holferty as to Goulds Drainage District taxes on the 105-acre tract, and Holferty denies that he had anything to do with the 105-acre tract, although officials of the Executor admit they consulted with him generally in connection with the farm lands of the Henderson Estate, and it also appears that Holferty held bond credit

with the Goulds Drainage District through which the Executor adjusted Goulds Drainage taxes on other tracts.

"On the 7th day of July, 1930, the tax collector of Dade County, Florida, by a separate sale, sold to the Commissioners of Goulds Drainage District, tax Certificate No. 12 for a stated consideration of $184.82. On April 28, 1933, J. M. Holferty bought from Harley R. Gore, Preston E. Lee, and G. E. McKaskill, as bond trustees, said certificate No. 12, for a stated consideration of $818.38, and took the certificate in the name of W. R. Boose, the brother-in-law of J. M. Holferty, in whose name a tax deed was issued on April 28, 1933, and on December 15, 1933, the title of the property was conveyed from Boose to Holferty for $1,034.62, purporting to represent the actual amount of money which was invested in the property. Holferty then spent some $1,200.00 in clearing and improving the land, and subsequently sold the property to A. B. Thompson and E. J. Taintor for approximately $4,200.00, $2,900.00 of which has been paid, and the balance of $1,312.50 is secured by a mortgage given by Thompson and Taintor to Holferty.

"At the time Boose bought the tax certificate the evidence shows that the property was worth $1,500.00 to $1,600.00 but that at the present time the property is worth between $10,000.00 and $15,000.00; that the annual rental value is approximately $10.00 per acre. Holferty claims that Boose was the real purchaser of the tax certificate and the tax deed, but in view of his alleged agreement with Boose that he could have any of the property back which he purchased for him, and in view of the fact that he kept no separate funds of Boose on hand, Boose was, so far as this transaction was concerned, nothing more than a 'straw man' and Holferty was the real party at interest. As the selling and renting agent of the Executor and general consultant in

connection with the property belonging to the Henderson Estate, Mr. Holferty was in a position to obtain knowledge and information which he used for his own advantage, and his conduct in this transaction was somewhat reprehensible. However, the evidence clearly shows that Curtis E. Lee, acting as Treasurer of the Bondholders Trustees, gave Mrs. Henderson, as Trustee, and the Executor, ample opportunity to redeem the tax certificate before it was sold to Boose, and it therefore does not appear that the Trustee, the Executor of the Estate, or the Estate were deprived of any opportunity to protect the assets of the estate by the conduct of Holferty.

"Thompson and Taintor appear to be bona fide purchasers of the property in question without any knowledge of any relation which may have existed between Holferty and the Executor and Trustee, and in the opinion of the Master any attempt made to attack the title of Thompson and Taintor on the theory of constructive fraud on the part of Holferty must fail.

"At the time the Goulds Drainage District was established a committee was appointed as required by the statute, which, after the work was completed, was discharged by the County Commissioners and Bond Trustees were subsequently duly appointed. However, no Commissioners of the Goulds Drainage District were ever appointed, and since its inception the Bond Trustees have acted as Commissioners for the Goulds Drainage District. It is the contention of the plaintiff that since no Commissioners of the Goulds Drainage District were actually appointed, the procedure which was followed in this case and which has been uniformly followed since the organization of the District: for the Tax Collector to knock off the tax certificates to the Commissioners of the Goulds Drainage District where

individuals have not purchased them, without receiving any actual money for the sale of the said certificates and without including the Goulds Drainage taxes in the sale of State and County taxes, and of delivering the said certificates to the Bond Trustees and acting Commissioners of the Goulds Drainage District, and their subsequent sale by assignment to individuals and the issuing of subsequent deeds upon such certificates, is void. And that the Clerk of the Circuit Court in signing a deed for the Commissioners of the Goulds Drainage District acted without authority because there were no official Commissioners ever appointed for the District. It is further contended by the plaintiff that since the statute creating the Goulds Drainage District required that the taxes shall be assessed and collected 'in the same manner as other taxes' it should be construed to mean that these taxes should be included in the sale of the property for State and County taxes, and that the Tax Collector had no authority to sell the property for State and County taxes and then again sell it for Goulds Drainage District taxes.

"The Goulds Drainage District was organized pursuant to the Law entitled 'Drainage by Counties' as embraced in Section 2785 to 2824, C. G. L. 1927. There is no decision in the State of Florida upon the validity of the method followed by the Goulds Drainage District, and so far as the Master has been able to ascertain there is no case directly in point as to the validity of the acts performed by the Bond Trustees as Commissioners. However, the reasoning of the Supreme Court in the case of Ridgeway v. Reese, 131 Sou. 136, and the case of Overstreet v. Gordon, 163 So. 447, although not exactly upon the point involved here, would indicate that in a case of this kind the original property owner could not complain upon a purely

formal defense against the validity of a tax deed, and that whatever might be the rights of the bondholders to object to their Trustees acting also as Commissioners, the irregularity of the proceedings would do no more than to make the deeds voidable and not void.

"I further find that the Defendants, A. B. Thompson and E. J. Taintor, have paid for the redemption of taxes and the payment of taxes since they acquired title to the property, the sum of $809.40.

"I therefore find that the equities are with the defendants; that a decree should be entered in accordance with the prayer of the answer confirming the title in A. B. Thompson and Jolando Thompson, his wife, and E. J. Taintor and Jewel Taintor, his wife, subject to the mortgage of J. M. Holferty as set forth in the pleadings."

The final decree entered by Circuit Judge Paul D. Barns on November 13, 1937, and from which this appeal was taken reads in part as follows:

"The above styled and entitled cause comes on before this court to be heard upon plaintiff's exceptions to the report of the master, and argument of counsel for the respective parties having first been had and the court being fully advised in the premises, it appears that:

"(1)   In 1919 Goulds Drainage District was organized under Chapter 21, entitled 'Drainage by Counties,' and embraces Sections 2785-2824, both inclusive.

"(2)   At the time of the organization, a committee was appointed as required by Section 2787. At the completion of the work of the committee, with the assistance of engineers and other employees the County Commissioners approved the work, made the assessment for the benefits to the property holders and apportioned the assessment according to the acreage, certifying the assessment to the tax

assessor who placed it on the general tax roll against the several portions of property, and under the assessor's certificate, the collector was instructed to collect the assessment:

· " 'The same shall be collected by the tax collector in like manner as other taxes are collected and made a special fund for the payment of the indebtedness incurred in the construction and annual maintenance of said ditch, drain or canal, in accordance with Section 2790, Compiled Gen. Laws.'

"(3) It has been assumed by both sides that the work up to this point was regular and no point is raised prior to this assessment.

"(4) According to the testimony there are no commissioners or committee of the District, and there has been none since the drainage operation was completed. The Bond Trustees have been doing all the business of the District. See Testimony of Curtis E. Lee. The separate duties of the Bond Trustees and administrative committee showing the duties required of each are set out in Section 2797, Compiled General Laws of Florida.

· "(5) The property had gone delinquent for State and County and other taxes, in 1927, and on October 26, 1929, the tax sale certificate for the 1927 State and County taxes was redeemed and at the time of the redemption the State and County taxes and all other taxes (except Goulds Drainage District taxes) for 1928 and 1929 were paid as required by Section 984 Compiled General Laws. The drainage tax, however, for 1929 was not collected as required by law when the property was redeemed.

"(6) On July 7, 1930, the Tax Collector held a sale for the drainage tax or assessment for 1929, although the tax assessment for 1929 was on the tax roll and should have been paid at the redemption for State and County taxes,

and on July 7, 1930, Bob Simpson, tax collector, issued a tax sale certificate to 'Commissioners Goulds Drainage District Tax Certificate No. 12' for the sum of $184.82 as recited in the certificate. The testimony shows that Commissioners Goulds Drainage District in fact paid nothing to the Tax Collector for the certificate.

"(7) On the 28th day of April, 1933, Harley Gore, Curtis E. Lee and G. E. McCaskill, as Bond Trustees, assigned the Certificate No. 12 to W. R. Boose.

"(8) On the 27th day of June, A. D. 1933, 'the Board of Commissioners of Goulds Drainage District, issued a tax deed for the property involved to W. R. Boose, c/o J. M. Holferty, Route No. 2, Miami, Florida.'

"The attestation clause of the tax deed reads as follows: 'In testimony whereof, by virtue of the authority in me vested by law, and for *and on behalf of the Board of Commissioners* of Goulds Drainage District, I, the undersigned, as Clerk of the Circuit Court for the County and State aforesaid, have executed this deed, and hereunto set my official signature and seal at Miami in the County of Dade, State of Florida, this 27th day of June, A. D. 1933.

'E. B. Leatherman
'As Clerk of the Circuit Court
'(SEAL)            Dade County, Florida.'

"Mr. Leatherman states in this deed that he is acting for the grantors, Board of Commissioners of Goulds Drainage District, and not for the State of Florida as Grantor.

"(9) The Tax Roll of the County shows in several columns the different taxes beginning with State and continuing across the roll; County School Board Tax; Special School Tax District Tax; County Bond Tax; Florida Navigation Tax; Baker's Haulover Tax; Goulds Drainage District Tax. Each of these taxes are collected under the

same statutory language as the Goulds Drainage District tax.

"(10) The county tax collector and assessor should treat the taxes levied for the Goulds Drainage District as ·they do state, county and school taxes, and when struck off to the state because of no sale to private buyers, that the Goulds Drainage District taxes should be on the same certificate as state and county taxes, and that same should be delivered to the clerk of the Circuit Court as are tax certificates for state and county taxes when not sold to a private buyer by the tax collector.

"Notwithstanding the foregoing facts this court finds that the procedure provided by law and the duties of the public officers have not been so far departed from as to make the sale void, whereupon, in consideration of the premises, it is

"ORDERED, ADJUDGED AND DECREED that the exceptions to the Master's report be and the same are hereby overruled and denied, and that the plaintiff's bill stand dismissed."

It is undoubtedly the general rule that where an agent having the management and control of real estate, or occupying a relation of trust and confidence to the owner with reference thereto, purchases at a tax sale, such a purchase vests no title in him but enures to the benefit of the owner. While there was a conflict in the evidence in this case as to whether or not Holferty was the agent of the Henderson estate, or of Mrs. Henderson or her predecessor as trustee of said estate, with reference to this particular tract of land, but the special master concluded, that Boose was but a straw man for Holferty and that Holferty's relations to the Henderson estate were such that he was in a position to obtain knowledge and information which he used to his own advantage, and that his conduct in this transaction was

"somewhat reprehensible." But the master adds that the evidence shows that the treasurer of the bond trustees of the district, Mr. Lee, gave the trustee, Mrs. Henderson, and the executor, ample opportunity to redeem the tax certificate before it was sold to Boose, and that therefore the trustee and executor were not deprived of any opportunity to protect the assets of the estate by reason of the conduct of Holferty. By overruling the exceptions to the master's report the chancellor approved this finding and the rule is well settled that the conclusions of the chancellor on fact, even when the testimony is taken before a master, will not be set aside by this Court unless they are clearly erroneous. But in this instance, the chancellor's decree shows that the tax certificate referred to was highly irregular, and was not based on a sale held in accordance with the applicable statutes, and covered taxes which should have been included when the redemption of the tax sale certificate for 1927 taxes took place on October 26, 1929. See paragraph 5 of the decree above quoted.

Appellant contends that the tax sale certificate issued to the "Commissioners" of Goulds Drainage District and the tax deed issued by the clerk of the circuit court for and in the name of the Commissioners of Goulds Drainage District as grantor are both invalid.

Goulds Drainage District was organized some twenty years ago pursuant to the general statute providing for "drainage by counties" as set forth in Section 2785-2824 Comp. Gen. Laws of 1927. The drainage canal was dug in 1919. These statutes provide for two distinct sets of officers, a committee composed of three disinterested freeholders who shall have power to employ a surveyor, establish the route, depth, width and length of the canal, and report back to the county commissioners with an estimate of the ap-

818

proximate cost, and the county commissioners after giving notice by advertisement for bids, are to let the contract to the lowest responsible bidder, the work to be done under the supervision of the committee above referred to, and when the work is completed the committee is to report the same to the Board of County Commissioners, and if after inspection the County Commissioners approve of the work, the board is empowered to assess against the lands benefited or to be benefited by said drain or · canal the difference between the estimated cost thereof, as estimated and assessed by the committee, and the actual cost thereof. Section 2792 C. G. L. provides that after the district has been established and assessments made and levied by the county commissioners and before awarding the contract the board of county commissioners shall issue and sell drainage bonds for the total amount of such assessments, less the interest charges. And in issuing and selling such bonds and distributing the proceeds thereof they shall act in conformity with the provisions of Compiled General Laws applicable to the issue and sale of bonds for constructing hard-surfaced highways or public buildings. The duties of the bond trustees are set out in section 2797 and said section does not authorize them to purchase tax certificates issued upon delinquent drainage taxes. It appears that the bond trustees are only empowered to borrow money to pay interest on bonds when there is no money in that fund and the committee above referred to is also authorized to borrow money only to meet expenses incurred in the discharge of its duties before funds have been provided by the issue and sale of bonds, and this with the approval of the board of county commissioners.

It will be noted that the statutes do not provide for "commissioners" for such a drainage district; it only pro-

vides for the appointment of a "committee" whose duties appear to have ended after the construction of the canal and the placing of the assessments, etc. Indeed, the statutes do not provide for any special governing body or administrative officers, but do provide for bond trustees for such a district, and the evidence shows that in this case the trustees have actually acted as the governing body of the district for many years and have been generally known and referred to both as commissioners and as trustees. As stated by the chancellor, "The bond trustees have been doing all the business of the district."

We concur in the conclusions of the chancellor as stated in paragraphs 9 and 10 of his decree pointing out the departure from statutory requirements in the sale for drainage district taxes involved in this case. The provision of Section 2790 C. G. L. to the effect that drainage assessments shall be collected "in like manner as other taxes are collected," was not complied with. The separate sale and issue of a separate tax sale certificate in the name of the district, separate and apart from other state and county taxes, was not authorized by the statute. Section 2790 says: "The same shall be collected by the tax collector in like manner as other taxes are collected, and made a special fund for the payment of the indebtedness incurred in the construction and annual maintenance of said ditch, drain or canal."

Section 1019 C. G. L. requires all tax deeds to be issued in the name of the State of Florida, or, in case of municipal taxes, in the name of the city or incorporated town, and shall be signed by the clerk of the circuit court. No special provision is made with reference to tax deeds issued for the nonpayment of drainage district taxes, so there is no statutory authority for the issuance of such a tax deed as

we are dealing with here, which is issued in the name and for and on behalf of the "Commissioners of Goulds Drainage District" and signed by the clerk.

As shown above, the statute does not provide for "commissioners" of such a district, and the chancellor finds that there were no commissioners.

The final conclusion of the chancellor that "Notwithstanding the foregoing facts this court finds that the procedure provided by law and the duties of the public officers have not been so far departed from as to make the sale void," is in our opinion hardly justified by the statements of law and fact so well and clearly stated in the preceding portion of his opinion and decree.

The only possible theory upon which the separate tax sale, and the tax certificate and tax deed based thereon, could be upheld as being merely voidable and not absolutely void, would be to apply to this case the provisions of Section 1 of Chapter 14572, Acts of 1929 (repealed in 1935), which prescribes that no tax assessment sale or conveyance shall be held invalid "except upon proof that the property was not subject to taxation, or that the taxes had been paid previous to sale, or that the property had been redeemed prior to the execution and delivery of deed based upon certificate issued for non-payment of taxes." But this statute was applicable to only state and county taxes, not to municipal or district taxes. The case of Overstreet v. Gordon, 121 Fla. 180, 163 So. 477, dealt with state and county taxes.

The facts of this case do not show such laches as would bar the complainant from the equitable relief sought. Mrs. Henderson as trustee is entitled to a decree cancelling the tax deed, as being void and of no effect, and the deed to Tainter and Thompson was therefore ineffectual as a

conveyance of the title which still remained vested in the trustees under the will of Parker Henderson, deceased, the tax deed notwithstanding. Nor did Taintor & Thompson's purchase money mortgage effect any lien on the land, for like reasons.

The decree appealed from must therefore be reversed. However, one who seeks equity must do equity. Under all the circumstances disclosed by the record, it appears that certain of the defendants have made permanent improvements or betterments to the land at their own expense, which have increased its value, for which they are entitled to reimbursement, or to be credited therefor as against the rentals collected by them, and certain of the defendants have paid taxes for which they are likewise entitled for reimbursement or credit, as the facts and the law may require. These equities may be dealt with and worked out in further proceedings and decree in the trial court. It may be some further testimony will have to be taken. We will not therefore plow this ground in advance of the trial court. The able chancellor can doubtless adjust these equities between the parties with complete justice to all concerned.

Reversed and remanded for further proceedings not inconsistent with the foregoing opinion.

WHITFIELD, P. J., and CHAPMAN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## ON PETITION FOR REHEARING

BROWN, J.—In our original opinion we held that "the separate sale and issue of a separate tax sale certificate in the name of the district, separate and apart from other state

and 'county taxes, was not authorized by statute." Appellees contend that this statement is erroneous; that the provision in Section 2790 C. G. L. to the effect that the drainage district assessments "shall be collected by the tax collector in like manner as other taxes. are collected," and shall be assessed "in the same manner as other taxes are assessed," was only meant to adopt the procedure provided by law for the sale of state and county taxes as a pattern, and did not mean that that procedure should be followed in every detail. In this connection our attention has been called to the comparatively recent case of State *ex rel.* Campbell v. Sloan, 135 Fla. 179, 184 So. 781. That case involved a tax certificate for delinquent drainage taxes due to Peace Creek Drainage District, a corporation organized and existing under the provisions of Chapter 6458, Acts of 1913, being Sections 1451-1507 C. G. L.

The statute we are here dealing with is Chapter 6457 of the Acts of 1913, Sections 2785, *et seq.,* C. G. L. The statute construed in the case of State *ex rel.* Campbell, *supra,* was different in some respects from the statute we are here considering inasmuch as said Chapter 6458 set up a system of drainage districts, each district to be a corporation, the officers of which were required to make their assessment and set them up in separate tax books, which were to be delivered to the tax collectors 'and it was made the duty of the tax collectors to demand and collect such taxes in the same manner and at the same time that he demanded and collected state and county taxes due on the same lands. The relator in that case had requested the clerk of the circuit court in writing, under the provisions of Chapter 18296, known as the Murphy law, to advertise a certain tax certificate for sale pursuant to said Chapter 18296. The respondent clerk did offer for sale, subject

however to the payment in full of the drainage district tax, said certificates. The relator was the highest and best bidder at the sale but refused to pay the clerk the said drainage tax included in said certificate, in full, and the clerk refused to deliver to him the said certificate. The relator then brought action of mandamus against the clerk. It was admitted in that case that said Chapter 6458, under which the district was formed, required the tax collector to collect the drainage taxes levied and assessed under the Act "in the same manner and at the same time as state and county taxes are collected," that he shall pay the same to the treasurer of the district. See also Sections 4 and 5 of Chapter 13721, Acts of 1929. In said case of State *ex rel.* Campbell v. Sloan, *supra,* this Court, speaking through Mr. Justice BUFORD, said that:

"Chapter 18296, Acts of 1937, applies only to tax sale certificates for delinquent State and County taxes and the provisions of that Act do not apply to drainage district taxes, regardless of the mechanics by which drainage district taxes are levied and assessed and, therefore, the provisions of Chapter 13721, Acts of 1929, are not effective to make the drainage district tax a part of the State and County tax."

It was also held in that case that said drainage district statute as amended, the provisions of which are above mentioned, "did not authorize the tax collector to include the drainage district tax in a tax sale certificate embracing State and County taxes, and the inclusion of state and county taxes and drainage district taxes in one tax sale certificate could not affect either the rights of the drainage district or of the state and county." Continuing, the opinion in that case further says:

The provisions of the last paragraph above quoted from

Chapter 13721, *supra,* are sufficient to require that tax sales for delinquent drainage district tax may be held and conducted by the several officers named, in the same manner and at the same time that tax sales are made and conducted for the delinquent State and County taxes, but this does not mean that they should all be included in one and the same transaction and the lien arising from the sale evidenced by one and the same tax sale certificate. Under these provisions, there should have been a separate sale for the delinquent county and state taxes and another for delinquent drainage district tax and separate certificates should have been issued evidencing the lien arising from each of such levies and sales, respectively. That this was not done will not vitiate the sale nor will it destroy the lien created by operation of law on the lands assessed for either of such purposes. Each of the liens is made by law of equal dignity."

The Goulds Drainage District lies wholly within Dade County. The State as such has no interest in it. All of the taxes it collects go into "a special fund for the cancellation or redemption of the indebtedness incurred in the construction of such drain or auxiliary as aforesaid." Section 2811 C. G. L.

While the statutes construed are in some respects different, we now hold, in line with the principles laid down in the case of State *ex rel.* Campbell v. Sloan, that the separate sale and the issuance of a separate tax sale certificate in the name of the Goulds Drainage District, separate and apart from State and County taxes, would not and did not affect the validity of such certificate or the lien for taxes represented thereby. In that respect we recede from our previous opinion in this case.

On rehearing, appellees further contend that there is

statutory authority for the Clerk of the Circuit Court of Dade County to issue tax deeds based upon tax certificates issued for payment of Goulds Drainage District taxes. We held in our original opinion that "no special provision is made with reference to tax deeds issued for the non-payment of drainage district taxes, so there is no statutory authority for the issuance of such a tax deed as we are dealing with here which is issued in the name and for and on behalf of the Commissioners of Goulds Drainage District and signed by the clerk. As above shown, the statute does not provide for commissioners of such a district, and the chancellor finds that there were no commissioners."

In this connection, appellees insist that Section 2818 C. G. L. does imply that the clerk of the Circuit Court may issue such a deed. That section provides for the levy of taxes by the county commissioners for the purpose of paying the costs of maintaining and repairing "any such ditch, drain or canal and auxiliary thereto," and that the expense of *maintenance* shall be borne by said lands in the same relative proportion as the original expense of constructing said drain, and concludes as follows:

"And the tax so imposed shall be levied and assessed by the same officers at the same time and in the same manner as other taxes are assessed, and shall be collected by the county tax collector as other taxes are collected, and in case of default in the payment of such tax the same penalty shall obtain and the lands may be sold and conveyed in the same way that lands are sold and conveyed for the collection of other taxes, and the money so collected shall be preserved in a separate fund for the maintenance of the ditch, drain or canal for the original construction of which such lands were assessed. (*Id.,* Sec. 4.)"

Unfortunately, this section merely deals with taxes im-

posed to pay for maintenance and repairs, but appellees contend that by implication it should be extended to cover the assessment for the cost of the original construction; that unless land could be sold and conveyed for non-payment of taxes there would be no force to the statutes and no means of enforcing payment. We wish that we could concur in this view. In behalf of it much has been said by counsel for appellees in their able brief, wherein, among other things, it is said that in the various districts of the State organized under this statute, it has been generally deemed sufficient for the clerk to issue tax deeds, and that while it would seem to be more agreeable with the statutes that such tax deeds should be issued by the clerk for and on behalf of *the district,* its mere issuance as in this case for and on behalf of. "Commissioners of Goulds Drainage District" is immaterial, being the same in effect and meaning as if it had been issued for and on behalf of Goulds Drainage District; that the words, "Commissioners of" might be regarded as mere surplusage, it being beyond question that the deed was issued for the benefit of the district and for and on its behalf. Counsel also contend that the undisputed evidence shows that the bond trustees who acted for the district are generally referred to in Dade County as "Commissioners" and that the terms "Trustees" and "Commissioners" are interchangeably used, although strictly according to the statute they were mere bond trustees. It is further argued that as the statutes do not provide for any body or authority to issue tax deeds or provide for any one on whose behalf such deeds should be issued, this Court should imply that it was the intention of the Legislature that a valid tax deed could be issued by the clerk for and on behalf of the district, especially in view of the language above quoted from Section 2818 C. G. L.; that it cannot be said that the former owner of the lands or any one else

has been misled or harmed by the manner in which the deed was issued; that the deed was properly signed by the clerk of the Circuit Court under his official seal and recited that it was based upon a certain certificate and contained everything else that all tax deeds contain in form, substance and execution and that therefore the matters complained of cannot be considered as anything but formal or technical in their nature, which objections come to naught when considered in the light of Chapter 14572, Acts of 1929, which was then in effect. It is further argued that all the steps leading to the issuance of the tax deed in question, as well as its actual issuance, were the same procedure which had been followed since the inception of the district, and that if there is no statutory authority saying in whose name or on whose behalf such deeds should be issued, thus rendering them void and ineffectual, then payment of such district taxes cannot be enforced, and the outstanding bonds become ineffectual and the district is rendered impotent.

We realize the force of all these objections, but it is beyond the power of this Court to supply statutory authority for the issuance of a tax deed, such as the one here in question, when we cannot find such authority in the statutes themselves. This, however, does not impair the lien which the district has for these unpaid taxes, nor the right of such district or the assignees of the tax certificate to enforce such liens by foreclosure proceedings in equity.

We must reluctantly conclude, therefore, as was stated in our former opinion, that the only theory upon which this tax deed can be upheld as being merely voidable and not void would be to apply to this case the provisions of Section 1 of Chapter 14572, Acts of 1929. In our former opinion we held that this could not be done because Chapter 14572 was applicable to only state and county taxes, and was not applicable to municipal or district taxes.

It is true that the first clause of the title of Chapter 14572 is broad enough, if the title had stopped there, to apply to all forms of taxation. It begins with these words: "An Act Relating to and Concerning Taxation." Also the language of Section 1 of the Act, standing alone, is broad enough to cover drainage district taxes. It begins with the language: "All taxes imposed pursuant to the Constitution and laws of this State shall be a first lien superior to all other liens on any property against which such taxes have been assessed which shall continue in full force and effect until discharged by payment, and no act of omission or commission on the part of any tax assessor, or any assistant tax assessor, or any tax collector, or any board of county commissioners, or any clerk of the Circuit Court or any other officer of this State, or any newspaper in which any advertisement of sale may be published, shall operate to defeat the payment of said taxes;" etc. And said section winds up with these words: "And no assessment, and no sale or conveyance of real or personal property for non-payment of taxes, shall be held invalid except upon proof that the property was not subject to taxation, or that the taxes had been paid previously to sale, or that the property had been redeemed prior to the execution and delivery of deed based upon certificate issued for non-payment of taxes."

While it is true that in Lee v. Walter-Keogh, Inc., 105 Fla. 199, 141 So. 131, we held that municipal tax sale certificates could be foreclosed in the same suit along with state and county tax certificates under Chapter 14572, and while we held in Southwest Enterprises, Inc., v. Frasse, 113 Fla. 770, 152 So. 175, that a holder of City of Coral Gables tax certificates could foreclose the same under Chapter 14572 because that chapter was in effect adopted

by a provision in the city charter, in both cases this Court recognized the authority of the case of State *ex rel.* Dofnos Corporation v. Lehman, 100 Fla. 1401, 131 So. 333, in which latter case it was held by this Court that the title and text of both Chapter 10040, Acts of 1925, and Chapter 14572, Acts of 1929, which supersedes Chapter 10040, "show conclusively that they apply only to State and County taxes and have no relation whatever to municipal taxes or certificates." It might be observed that Section 16 of the Act, dealing with the validation of tax sale certificates and deeds which were invalid on account of any matter or thing not affecting the authority "of the State or any County thereof" to levy and collect taxes evidenced thereby, clearly indicates, at least insofar as that Section is concerned that it applies only to State and County tax matters.

It is true that in Overstreet v. Gordon, 121 Fla. 180, 163 So. 477, it was stated in the opinion of this Court that: "The policy of Chapter 14572, particularly Section 1 thereof, was to abolish purely formal defenses against the validity of tax deeds, whether issued pursuant to administrative proceedings or not. The statute applies to all cases of tax deeds when judicially attacked in any case wherein it is made to appear that a valid tax deed could have been lawfully issued," etc. But that case apparently dealt with a tax deed based on State and County taxes, and did not attempt to overrule the Dofnos case. Indeed the case of State *ex rel.* Dofnos Corporation v. Lehman, *supra,* has never been overruled and in that case, as we have seen, the Court held that the title and text of Chapter 14572 shows conclusively that they apply only to state and county taxes, and this holding has been approved in a number of subsequent cases.

We must hold therefore as we did in our original opinion

that Chapter 14572 has no application to a tax deed based upon drainage district taxes, such as we are now considering. While *the lien* for taxes on the land involved in this case, as evidenced by the tax sale certificate of July 7, 1930, based on the drainage tax for 1929, in the sum of $184.82, as well as any other unpaid taxes due the district, continued to exist, the tax deed itself, which was issued on June 27, 1933, for the reasons hereinabove set forth, we must hold to be invalid. Holferty, on April 28, 1930, paid to the bond trustees $818.38 for this certificate, which he took in the name of W. R. Boose, and the tax deed was issued on June 27, 1933, to Boose, in consideration for the payment of $1,015.54, and about six months later on December 15, 1933, Boose conveyed the property described in the tax deed to Holferty for $1,034.62, purporting to represent the actual amount of money which had been invested by Boose in the property. The tax deed to Boose recited that the applicant had surrendered the tax certificate, based on non-payment of 1929 taxes, and had redeemed or purchased and surrendered all other outstanding subsequent tax certificates and that the recited consideration of $1,015.54 was paid "upon the certificates, and for costs and charges." Holferty then spent some $1,200.00 in clearing and improving the land and subsequently sold the property to appellees Thompson and Taintor for $4,200.00, $2,900.00 of which had been paid at the time of the hearing below, and the balance secured by a mortgage given by said purchasers to Holferty. It appears that Thompson and Taintor were bona fide purchasers for value of the property in question. They further improved the property and at the time of the hearing it was found by the master to be worth from ten to fifteen thousand dollars. When the land was sold for drainage district taxes in 1930 and when the deed was issued it was still wild, unoccupied and unculti-

vated land, and at the time Boose bought the tax certificate the evidence showed that the property was worth around fifteen hundred dollars.

On this rehearing counsel for appellees propound the following question: "In the event of the cancellation of a tax deed embracing property which has been held under it and improved and a rental value developed by the tax deed purchaser, to what extent is the former owner required to pay for betterments and do justice as a prerequisite to have cancellation?"

In our former opinion we held that the appellant, Mrs. Henderson, was entitled to a decree cancelling the tax deed, which would render the deed to Taintor and Thompson ineffectual as a conveyance of title. We also held that "under all the circumstances disclosed by the record, it appears that certain of the defendants have made permanent improvements or betterments to the land at their own expense, which has increased its value, for which they are entitled to reimbursement, or to be credited therefor as against the rentals collected by them, and that certain of the defendants have paid taxes for which they are likewise entitled for reimbursement or credit, as the facts and the law may require. These equities may be dealt with and worked out in further proceedings and decree in the trial court. It may be that some further testimony will have to be taken."

Counsel for appellees say that this language indicates that the Court was under the impression that the holders of the tax deed had collected rentals from third parties for which appellant may be entitled to an accounting, whereas appellees contend that since the undisputed testimony in the record shows that the land was wild and not fit for cultivation at the time the tax deed issued and was then without rental value, that no accounting would be due appellant for rental

values created by the appellees. Upon further consideration of this rehearing, we are of the opinion that this contention is well founded.

Furthermore, it is argued that the chancellor would be without authority to require that equity be done by the appellant, upon the basis of our former decision. That he would be without authority to require any one to reimburse appellees Thompson and Taintor for the amount they paid for the land and would likewise be without authority to require appellant to pay anything for the greatly increased value resulting from the labor and industry and funds of the appellees, all of which appellant would receive without consideration and for which appellees would be without remedy.

Except for certain facts referred to in our former opinion, regarding the relations between appellee Holferty and the Henderson estate, this case would probably have fallen within the operative effect of the principle enunciated in Fla. Inv. Co. v. Williams, 98 Fla. 1258, 116 So. 642, wherein this Court, speaking through Mr. Justice TERRELL, said:

"An equitable estoppel as affecting land titles is a doctrine by which a party is prevented from setting up his legal title because he has through his acts, words or silence led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience. Terrell v. Weymouth, 32 Fla. 255, 13 So. 429; Hagen v. Ellis, 29 Fla. 116, 58 So. 721; Thomas v. Goodbread, 78 Fla. 297, 82 So. 835."

But the decree of the trial court was not based on this principle, which is not referred to in the chancellor's opinion, and the facts as found by the master, based on the testimony, did not, in our opinion, bring this case within

the decision in the Williams case, *supra,* as contended for by appellees.

The evidence tends to show that some $1,200.00 was expended by Holferty in clearing and ditching the land after the tax deed issued, thus rendering it fit for cultivation. Certainly it would not appear to accord with the principles of equity to require the purchasers who have created a value by improvements and betterments to account to the former or real owner for a new rental value created by them. Thus Mrs. Henderson as Trustee would not be entitled to rentals except those based upon the rental value of the property which existed at the time the tax deed issued.

The appellant, Mrs. Henderson, as trustee, having come into a court of equity, must do equity, and we hold that as a condition precedent to obtaining a cancellation of the tax deed she should under the circumstances of this case be required by the trial court to first pay into the registry of the court a sum sufficient to reimburse these appellees for the improvements and betterments made by them to the land at their expense, to the extent that such improvements and betterments have added to the value of the land over what that value was at the time the tax deed issued, and also sufficient to reimburse appellees for any and all taxes which they have paid upon the lands, including the taxes and any lawful costs and charges represented by the district tax sale certificate or certificates upon which the deed was attempted to be issued, together with interest thereon. But as to any such increased value, based on the improvements made by Holferty, as well as the taxes paid by him in such amount as may be determined by the trial court, it should be decreed that the same be paid over to appellees Thompson and Taintor, Holferty's grantees, by way of reimbursement

834

to them *pro tanto* of the amount ($2,900.00) paid by them to Holferty on the purchase price of the land.

As hereinabove modified, our original opinion and decision is adhered to on rehearing, and the decree appealed from is therefore reversed and remanded for further proceedings consistent with our original opinion as modified and changed by this opinion on rehearing.

WHITFIELD, P. J., and CHAPMAN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.