887 So.2d 412 (2004)
Michael H. OESTERLE, individually, Appellant,
v.
Joseph D. FARISH, Jr., Appellee.
No. 4D03-3575.
District Court of Appeal of Florida, Fourth District.
October 20, 2004.
Rehearing Denied December 22, 2004.
*413 Elliot H. Scherker, David A. Coulson and Julissa Rodriguez of Greenberg Traurig, P.A., Miami, for appellant.
Louis L. Williams of Williams and Heffling, and Diran V. Seropian and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellee.
WARNER, J.
Appellant, Michael Oesterle, appeals the trial court's order denying his motion to dismiss for lack of personal jurisdiction a complaint alleging fraud and breach of a personal guarantee agreement. He claims that he is protected by the corporate shield doctrine. The trial court determined that Oesterle made essentially false representations as to his intentions to complete the transaction in negotiating a contract for sale of a business in Florida. We conclude that there was sufficient evidence of an intentional tort by Oesterle directed at the Florida plaintiff to warrant the assertion of jurisdiction.
Oesterle, a Michigan resident, was the managing agent of SBG, a Delaware limited liability company. SBG entered into an agreement with GEM Broadcasting to purchase its assets, including radio transmission towers and radio station licenses. As part of the agreement, SBG also agreed to assume the lease of a twenty-two seat skybox at Pro Player Stadium held by Joseph Farish, GEM's owner. However, it also agreed that seven seats would continue to be reserved for Farish's use.
Complications arose in the closing of the agreement when SBG refused to close. Farish demanded that Oesterle personally appear in Florida to resolve the differences, and Oesterle agreed to a meeting. At the meeting, according to Farish, Oesterle agreed to see to it personally that SBG would fulfill its agreement to accept assignment of the skybox lease, and he personally guaranteed that a food and beverage budget of $750 would be provided per game. Unbeknownst to Farish, SBG had already arranged to sell off all of GEM's assets, except the skybox lease, to other corporations at a substantial profit. Those sales occurred the same day as the closing of the entire transaction. SBG did not accept assignment of the skybox lease. Instead, six days after closing it sued GEM for breach of warranty as to the condition of the radio towers. When SBG failed to perform with regard to the skybox, Farish sued both SBG and Oesterle, personally.
The complaint set forth causes of action for breach of contract and fraud. As to the breach of contract count, Farish alleged Oesterle agreed to personally see to it, as leader of SBG, that the skybox lease would be assumed. Farish further alleged that Oesterle personally guaranteed that $750 would be allocated per game for refreshments. In the fraud count, Farish alleged that at the time Oesterle guaranteed *414 the contract he never intended to perform it and, thus, misrepresented a material fact on which Farish relied to his detriment in closing on the transaction.
Oesterle moved to dismiss for lack of personal jurisdiction, alleging that he is protected by the corporate shield doctrine as all of his activities were for the benefit of the corporation and not for himself personally.
The court held a hearing at which both sides presented evidence. Oesterle denied personally guaranteeing the transaction, insisting that at all times he acted for the corporation. After the closing of the transaction, he signed a letter agreeing that the buyer (SBG) would assume the skybox lease with Farish retaining certain privileges as set forth in the contract, and there would be a $750 budget for food and beverages for each game.
Farish testified that Oesterle had personally promised to see to it that the lease was assigned to SBG. At the last meeting between Farish and Oesterle, Farish told Oesterle that he wanted Oesterle "to guarantee himself personally that he was going to see that these things were accomplished." Oesterle told him, "I will personally see that it will be done."
The trial court believed that Oesterle made personal representations regarding the skybox lease. Further, the court found Oesterle had a personal financial interest in seeing the transaction completed because his family trust stood to gain by the sale. The court denied the motion to dismiss, concluding:
The greater weight of the evidence supports Farish's view that Oesterle individually made certain representations concerning the lease: Farish had previously warned Oesterle not to bait litigation; Oesterle chose to write the March 24, 2000 letter in ostensibly his personal capacity; Oesterle knew SBG intended to sue GEM prior to the April 7, 2000 closing; Oesterle individually nonetheless signed a letter to Farish concerning the skybox lease; Oesterle knew that SBG had contracts to sell all other assets purchased, leaving only the sky box lease; and Oesterle had a financial interest in the out-come: a trust for the benefit of Oesterle's family stood to gain if the sale went forward. Oesterle intended to offer, and for Farish to rely on, his personal representations concerning the skybox lease. While the substance and concomitant legal effect of those representations may be subject to dispute, there is nothing unfair about requiring Oesterle to defend the implications of those statements in Florida  where the statements were made, where Oesterle voluntarily stepped outside his corporate role and placed his personal integrity on the line, and where the property involved is located.
Florida's long-arm statute, section 48.193, Florida Statutes (2001), states in pertinent part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
...
(b) Committing a tortious act within this state.
A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. Wendt v. Horowitz, 822 So.2d 1252, 1256 (Fla.2002) (citations omitted). There is a "two-step inquiry for determining whether long-arm jurisdiction over a nonresident defendant in a given *415 case is proper: First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the [long-arm] statute; and if it does, the next inquiry is whether sufficient `minimum contacts' are demonstrated to satisfy due process requirements." Id. at 1257 (citing Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989)).
Oesterle contends that he is not subject to Florida jurisdiction because he is protected by the corporate shield doctrine. The corporate shield doctrine protects corporate agents from being subjected to Florida jurisdiction for acts performed while conducting business in Florida on behalf of a corporation. Doe v. Thompson, 620 So.2d 1004, 1006 (Fla.1993). However, "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction." Id. at n. 1; see also Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc., 869 So.2d 592, 598-600 (Fla. 1st DCA 2004) (holding vice-president of corporation who developed and implemented unfair and deceptive corporate practice aimed at Florida residents was not protected by corporate shield doctrine for intentional tortious conduct); Allerton v. Dep't of Ins., 635 So.2d 36, 39 (Fla. 1st DCA 1994) (holding corporate employee who engaged in acts intended to defraud a Florida life insurance company was not protected by corporate shield doctrine from personal jurisdiction in Florida).
Farish alleged and provided evidence that Oesterle made false representations that he would personally see to it that SBG would assume the skybox lease. This assurance was necessary for Farish to close the transaction. The evidence was susceptible to an interpretation that Oesterle made the representation knowing that it was false and that the company had no intention of performing. For one thing, SBG had already agreed to sell GEM's other Florida assets to different companies, thus eliminating the need for the skybox lease as it was to be the only asset remaining in Florida. Further, Oesterle had a motive to see that the transaction closed because his family would benefit from the sale.
Because the complaint alleges, and the evidence supports, that Oesterle committed an intentional tort in Florida against a Florida resident, both the statutory predicate and due process are satisfied. We therefore affirm the order of the trial court.
SHAHOOD, J., and GATES, MICHAEL L., Associate Judge, concur.