WARNER, J.
 

 The issue presented in this case is whether an insurance broker can be liable to an insurance company for negligent or intentional misrepresentations of fact having a material bearing on the risks assumed by the insurance company. The trial court dismissed the insurance company’s cause of action against a broker based upon the general rule that the broker is the agent of the insured not the insurer. We reverse, concluding that an insurance broker can be liable to an insurance company which suffers loss as a result of the broker’s own fraud or negligence in providing information in the application material to the issuance of the policy.
 

 This case arises out of the settlement of a legal malpractice action. The complaint alleges that in 2003 the law firm of Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, submitted an application for professional liability insurance to agent Kurt Stephany who forwarded the application to Appellee, First Indemnity Insurance Services, Inc., an insurance broker. Brinkley and/or Stephany pi-ovided to First Indemnity fourteen claim supplements outlining all professional liability claims, disciplinary proceedings, or suits involving the firm and its members within the last five years. In an attempt to secure insurance for Brinkley after the application had been rejected by several insurance companies, First Indemnity submitted the application to appellant Liberty, but it included only three of the claim supplements. The failure to supply Liberty with all of the claim supplements occurred without either Brinkley’s or Ste-phany’s knowledge. Based on the incomplete information provided, Liberty entered into an insurance contract with Brinkley effective March 2003 to March 2004.
 

 In February 2004, First Indemnity submitted a renewal application disclosing only those claims previously disclosed in the original application. Based on the incomplete information, Liberty renewed the contract effective March 2004 to March 2005.
 

 In January 2005, claimant Scheck filed an amended class action lawsuit against Brinkley and one of its lawyers seeking damages in excess of $500 million. Shortly thereafter, the policy came up for renewal, and First Indemnity for the first time disclosed to Liberty seven claims or suits initiated within the five-year period prior to the original insurance contract. Subsequently, Liberty learned of additional prior claims that were never disclosed by First Indemnity.
 

 Because of this disclosure, Liberty demanded that First Indemnity participate in settlement discussions of the class action suit, but First Indemnity refused. In
 
 *855
 
 May 2005, pursuant to a demand from Brinkley and to mitigate its damages, Liberty settled the class action for $3 million. Brinkley also provided information to Liberty showing that it had submitted all the proper claims information to First Indemnity even though First Indemnity did not submit them to Liberty.
 

 Liberty initiated a lawsuit against Brinkley and also against First Indemnity. It settled with Brinkley and pursued this suit against First Indemnity. In its suit against First Indemnity, after reciting the foregoing facts, it alleged that First Indemnity negligently or intentionally withheld the claim supplements and that Liberty would not have issued the original policy or renewed the policy had the additional claim supplements been provided. The third amended complaint sought to recover the money paid in settlement of the lawsuit under theories of negligent misrepresentation, common law indemnity, intentional misrepresentation, nondisclosure, fraudulent concealment, fraud, and negligence.
 

 First Indemnity moved to dismiss the third amended complaint, raising a myriad of arguments. First Indemnity maintained that in order to avoid the loss, Liberty had the right and duty to seek rescission of the policy. It asserted that Florida does not recognize a cause of action in tort by an insurance carrier against an agent of the insured seeking to recover settlement monies paid by the carrier under a liability policy when the carrier had knowledge of the alleged misrepresentations on the application and where the carrier abandoned its right to seek rescission of the policy issued to the insured. According to First Indemnity, any misrepresentations or altering of the application by First Indemnity were imputed to the insured and no legal relationship existed between Liberty and First Indemnity. Moreover, all of the claims were barred by the voluntary payment doctrine, as Liberty paid benefits under the policy with knowledge of grounds supporting rescission.
 

 Upon consideration of First Indemnity’s motion, the trial court dismissed the third amended complaint with prejudice. The court stated, “The insurer bears the risk of a broker’s error because of the general rule that an insurance broker is the agent of the insured rather than of the insurer.
 
 Empire Fire & Marine Ins. Co. v. Koven,
 
 402 So.2d 1352 (Fla. 4th DCA 1981).” The court agreed with the argument that Florida precedent would not allow Liberty to pursue a claim against the insurance broker. This appeal follows.
 

 Review of an order granting a motion to dismiss with prejudice is de novo.
 
 Kohl v. Blue Cross & Blue Shield of Fla., Inc.,
 
 988 So.2d 654, 658 (Fla. 4th DCA 2008). As we have previously explained:
 

 In assessing the adequacy of the pleading of a claim, the court must accept the facts alleged therein as true and all inferences that reasonably can be drawn from those facts must be drawn in favor of the pleader. In order to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief. A court may not go beyond the four corners of the complaint and exhibits attached thereto.
 

 Id.
 
 (internal quotations and citations omitted).
 

 Although Liberty’s complaint contains seven allegedly different counts, only three basic theories are advanced. First, that First Indemnity intentionally failed to disclose all the claims supplements; second, that it negligently failed to disclose all of the claims supplements; and third, that
 
 *856
 
 Liberty is entitled to common law indemnity from First Indemnity.
 

 The trial court granted the motion to dismiss, finding no duty from the insurance agent to the insurer, because the insurance agent is generally the agent of the insured, relying on
 
 Koven. Koven,
 
 however, is inapplicable. There, the insurance company filed a declaratory judgment action to determine whether the insured had uninsured motorist coverage under the policy. Koven’s insurance broker signed the application rejecting insurance coverage. Koven testified that the broker was not authorized to do so. Our court held that Koven was bound by the broker’s rejection based upon the general rule that the insurance broker is considered the agent of the insured not the insurer.
 
 Ko-ven
 
 did not involve tortious conduct by the broker or the insured. Thus, it does not address whether, as here, an insurer can maintain an action in tort against a broker who failed to transmit the insured’s complete claim history.
 

 An agent is individually liable to a third person for the agent’s tortious conduct.
 
 See Sussman v. First Fin. Title Co. of Florida,
 
 793 So.2d 1066 (Fla. 4th DCA 2001). There, we explained:
 

 [I]t is almost universally held that the existence of a principal and agent relationship is immaterial, the tort liability of the agent not being based upon the existence of any contractual relationship between the agent and a principal but upon the common law obligation that every person must so reasonably act or use that which he or she controls as not to harm another.
 
 See
 
 3 Am.Jur.2d,
 
 Agency
 
 § 309 (1986); Restatement Second of Agency § 343.
 

 Id.
 
 at 1069. An agent can also be independently liable for its own fraudulent misrepresentations.
 
 See Lyle v. Nat’l Sav. Life Ins. Co.,
 
 558 So.2d 1047, 1048 (Fla. 1st DCA 1990). Therefore, the fact that First Indemnity, as a broker, was the agent of the insured, does not preclude its liability for negligent or fraudulent conduct. The court erred in dismissing the complaint on this ground.
 

 In its complaint for negligence, Liberty sought to state a cause of action based upon section 552 of the Restatement (Second) of Torts. In
 
 Gilchrist Timber Co. v. ITT Rayonier, Inc.,
 
 696 So.2d 334 (Fla.1997), our supreme court adopted section 552 which establishes a principle for Information Negligently Supplied for the Guidance of Others. That section provides:
 

 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 

 Id.
 
 at 337.
 

 First Indemnity maintains that section 552 has never been applied to insurance brokers in Florida. Instead, it applies to professionals such as accountants, title agents, or other types of professionals who supply information to business transactions. However, in
 
 Gilchrist
 
 the court applied section 552 to the seller of real estate who negligently supplied the purchaser with erroneous zoning information on the property. In doing so, it reiterated what it said in
 
 Johnson v. Davis,
 
 480 So.2d 625, 628 (Fla.1985), “[t]he law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it.”
 

 
 *857
 
 Section 552 has been applied to insurance brokers by other courts. In
 
 Burlington Insurance Co. v. Okie Dokie, Inc.,
 
 329 F.Supp.2d 45, 46 (D.D.C.2004), an insurer sued an insurance broker for negligent misrepresentation in an insurance application. In denying the broker’s motion to dismiss for failure to state a cause of action, the court applied section 552 and District of Columbia law, holding that the broker, as the supplier of information, owed a duty of care to the insurer as the intended recipient of the information. The broker would be liable where the insurer reasonably relied on the broker’s misrepresentations. Similarly, in
 
 St. Paul Surplus Lines Insurance Co. v. Feingold & Feingold Insurance Agency, Inc.,
 
 427 Mass. 372, 693 N.E.2d 669 (1998), the court held that an insurance broker could be liable to the insurer for negligent misrepresentations on an insurance application prepared by the broker for the insured, relying on section 552.
 
 See also Midland Ins. Co. v. Market Serv.,
 
 548 F.2d 603 (5th Cir.1977) (applying Texas law and holding that substantial evidence supported the jury’s finding that the insurance broker misrepresented facts to the insurer concerning the limits of the insured’s primary liability coverage, that such misrepresentations were material, and that the insurer’s reliance on the misrepresentations directly resulted in the loss to the insurer).
 

 While not citing section 552, the court in
 
 Century Surety Co. v. Crosby Insurance, Inc.,
 
 124 Cal.App.4th 116, 21 Cal.Rptr.3d 115 (2004), used the same principle to hold an insurance broker liable to an insurer for misrepresentations on an application for insurance prepared by the broker. The California appeals court rejected the broker’s assertion that it owed no duty of care to the insurer and, therefore, as a matter of law could not be liable to an insurer for negligent misrepresentation. Considering factors articulated by the California Supreme Court, the court found that public policy supported imposing a duty of reasonable care in preparing an application for insurance. Specifically, the court found that: (1) the transaction was intended to benefit the insurer as well as the insured, (2) harm from misrepresentations in an insurance application are foreseeable, (3) the insurer incurred costs in defending an insurance claim on a policy that would not have issued but for misrepresentations, (4) the misrepresentations were material to the decision to issue the policy, and (5) the factor of moral blame supported a finding of duty.
 

 In line with the foregoing, section 552 applies to the facts of this case. Liberty alleged that First Indemnity, an insurance broker, engaging in a transaction in which it had a pecuniary interest, i.e. the payment of a commission, submitted an application for insurance on behalf of Brinkley. Although it knew of fourteen claims against Brinkley, it submitted the application with only three claims supplements, and it failed to disclose the others, without the knowledge of Brinkley, and intending that Liberty rely on the application to issue the policy. Thus, First Indemnity, not Brinkley, was the supplier of the false information upon which Liberty justifiably relied and then suffered pecuniary loss through payment of a claim covered by the policy.
 

 We reject Fust Indemnity’s contention that because Liberty alleges only a nondisclosure of information, it cannot be liable. Although Liberty alleges that First Indemnity failed to disclose the additional claim supplements, that failure is tantamount to supplying false information, because the submission of only three claims when there were actually fourteen is a misrepresentation of Brinkley’s claim his
 
 *858
 
 tory.
 
 See, e.g.,
 
 Restatement (Second) of Torts § 551(1) (“One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.”). This conclusion is consistent with our supreme court’s pronouncement in
 
 Johnson v. Davis,
 
 480 So.2d 625, 628 (Fla.1985), in which the court explained:
 

 In theory, the difference between misfeasance and nonfeasance, action and inaction is quite simple and obvious; however, in practice it is not always easy to draw the line and determine whether conduct is active or passive. That is, where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative representations is tenuous. Both proceed from the same motives and are attended with the same consequences; both are violative of the principles of fair dealing and good faith; both are calculated to produce the same result; and, in fact, both essentially have the same effect.
 

 By our application of section 552 to the facts of this case, we hold that an insurance broker is liable for its own negligence in supplying false information on which an insurer justifiably relies in issuing a policy and suffers pecuniary loss. The complaint stated a cause of action for negligent misrepresentation.
 

 With respect to those counts alleging fraud,
 
 Lyle
 
 holds that an agent is liable for its own intentional fraudulent acts.
 
 Accord Feingold,
 
 693 N.E.2d at 672. Liberty stated a cause of action for fraudulent misrepresentation.
 
 See E. Caribbean Dev. & Inv. Corp. v. K-K Auto Sen., Inc.,
 
 435 So.2d 364 (Fla. 4th DCA 1983). We agree, however, that the complaint did not state causes of action for common law indemnity because Liberty was obligated to pay based upon a contractual liability not a vicarious liability for the acts of First Indemnity.
 
 See Seitlin & Co. v. Phoenix Ins. Co.,
 
 650 So.2d 624, 627 (Fla. 3d DCA 1994).
 

 First Indemnity raises a multitude of other arguments as to why we should affirm the trial court, including the contention that Liberty should not have relied on the application and that Liberty’s settlement of the underlying action constitutes a voluntary payment precluding it from making this claim. These are matters that are not properly addressed on a motion to dismiss and depend upon the facts and circumstances of the case.
 
 See, e.g., Pac. Mut. Life Ins. Co. of Cal. v. McCaskill,
 
 126 Fla. 82, 170 So. 579, 583 (1936).
 

 As the complaint stated a cause of action for negligence and for fraudulent misrepresentations, we reverse and remand for further proceedings.
 

 FARMER and LEVINE, JJ., concur.