50 So.3d 62 (2010)
Robert HURT, Michael Weis, Kenneth Beck, Perry Brock and Randy Moore, Appellants,
v.
Mitchell I. KITROSER, as Personal Representative of the Estate of Rhina M. Castro Lara, Benigno Rodriguez, Individually, Gloria Rodriguez, Individually, and Felicita Lara, Individually, Appellees.
No. 4D09-4685.
District Court of Appeal of Florida, Fourth District.
December 8, 2010.
*63 Dinah Stein and Mark Hicks of Hicks, Porter, Ebenfeld & Stein, P.A., and Brad Redlien and Frank A. Zacherl of Shutts & Bowen LLP, Miami, for appellants.
Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, and Steven G. Calamusa of Gordon & Doner, P.A., Palm Beach Gardens, for appellees.
STEVENSON, J.
Appellants, all individuals and non-residents of Florida, challenge an order of the trial court denying their motions to quash service and to dismiss the wrongful death complaint filed against them for lack of personal jurisdiction. The complaint alleges that appellants were negligent while in Florida conducting business on behalf of their corporate employer. Because the so-called "corporate shield doctrine" is applicable, we must conclude that no personal jurisdiction exists over appellants and reverse.
The relevant jurisdictional facts are contained in the complaint and the uncontested affidavits. A commercial truck driven by Airgas Carbonic, Inc., employee Dale Dickey struck a car driven by Rhina Castro Lara, who was killed. Castro Lara's estate and survivors filed a wrongful death action. The third amended complaint (hereinafter the "complaint") named as defendants Airgas Carbonic, Inc., a foreign corporation; Dickeythe truck's driver; and the appellants, non-resident Airgas employees Robert Hurtthe vice-president of distribution for Airgas's Bartow, Florida, plant, Perry Brockthe Director of Safety for Airgas, Randy Moorethe safety manager for Airgas, and Michael Weiss and Kenneth Beckmanagers of the Bartow facility. The complaint alleged that each of these men was responsible for training, or overseeing the training, of Airgas drivers, including Dickey; that each had personally trained Dickey and had been physically present at the Bartow facility when they did so; and that each had reviewed Dickey's performance while physically present in Bartow, Florida. The complaint asserted negligent training, supervision and retention claims against appellants.
The appellants each filed similar motions seeking to quash service of process and to dismiss the complaint, arguing that Florida's corporate shield doctrine precluded the exercise of personal jurisdiction over a non-resident defendant sued personally, but whose contacts with the forum were initiated and performed for the benefit of his employer. The appellants filed affidavits in support of their motions, with each asserting that they resided in a foreign state, i.e., either Georgia or Texas; that they were at all material times acting within the scope of their employment and as agents of Airgas; that they worked at Airgas's Georgia site; that they did not own, rent or lease any property in Florida, *64 have any bank accounts in Florida, pay any Florida taxes, or hold any licenses issued by the state of Florida; that they had not conducted any personal business in Florida; and that they were not in Florida at the time of the accident. The appellants did not dispute that they had been physically present in Florida in connection with their obligations to train Airgas drivers, including Dickey, as alleged in the complaint. The plaintiffs opposed the motions insisting that the corporate shield doctrine did not apply because the appellants committed the alleged negligent acts while physically present in Florida. After a hearing, the trial court denied the motions to quash service and to dismiss; this appeal followed.
We review de novo the trial court's ruling on a motion to dismiss for lack of jurisdiction. See, e.g., Golant v. German Shepherd Dog Club of Am., Inc., 26 So.3d 60, 62 (Fla. 4th DCA 2010). We believe it to be fairly clear that, unless precluded by the application of the corporate shield doctrine, the allegations of the complaint establish personal jurisdiction for each of the individual appellants in Florida's courts. See § 48.193(1)(b), Fla. Stat.; see also Krilich v. Wolcott, 717 So.2d 582, 583 (Fla. 4th DCA 1998) (recognizing that "[t]he commission of a tort in Florida is sufficient to establish minimum contacts and satisfy federal due process concerns"). Thus, for the purpose of resolving the primary issue presented in this appeal, the proper scope and application of the corporate shield doctrine controls.
In Doe v. Thompson, 620 So.2d 1004 (Fla.1993), the Florida Supreme Court adopted the so-called corporate shield doctrine. There, after being sexually assaulted while working, a convenience store employee sued various officials of Southland Corporation, the company that owned and operated the convenience store, including president and CEO Jere Thompson. The plaintiff alleged Thompson had been grossly negligent in failing to take adequate security measures to make the store safe. Id. at 1004; see also Thompson v. Doe, 596 So.2d 1178, 1179 (Fla. 5th DCA 1992). Thompson, a Texas resident, alleged the Florida court lacked personal jurisdiction over him, filing an affidavit asserting that Southland was headquartered in Texas, that his office was in Texas, and that he never "personally" conducted business or committed a tort within Florida. Id. at 1181. Our supreme court affirmed the fifth district's holding that Florida's courts could not assert jurisdiction over Thompson.
In reaching its conclusion in Doe, the supreme court began its analysis with the two-step inquiry for establishing long-arm jurisdiction over a non-resident defendant: first, the complaint must allege sufficient jurisdictional facts to bring the action within one of the statutory requirements of Florida's long-arm statute and, second, the defendant's activities must constitute sufficient minimum contacts with Florida to satisfy federal due process concerns. 620 So.2d at 1005 (citing Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989)). The court found that the "statutory requirement, the first step in the Venetian Salami inquiry, was not met," under either section 48.193(1)(a) (engaging in business in Florida), (b) (commission of a tort in Florida), or (f) (causing injury in Florida). Id. The Doe court reasoned:
"Personally" means: "In person; without the intervention of another." The American Heritage Dictionary 926 (2d college ed. 1985). Thompson's affidavit states that he did not personally do anything in Florida: he did not personally operate a business in Florida, commit a tortious act in Florida, or cause injury in Florida.... While *65 Southland Corporation, which operates businesses in Florida, could be haled into court because of its minimum contacts, its chief executive officer is not by virtue of his position subject to personal jurisdiction.... Doe alleges that he was acting within the scope of his employment. The distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation is set out clearly in Bloom v. A.H. Pond Co., 519 F.Supp. 1162, 1170-71 (S.D.Fla.1981) (cited with approval in Kennedy v. Reed, 533 So.2d 1200, 1202 (Fla. 2d DCA 1988)). This distinction is recognized in many other jurisdictions; it is referred to as the "corporate shield" or "fiduciary shield" doctrine. [citation omitted]. "The rationale of the doctrine is `the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" [Estabrook v. Wetmore, 129 N.H. 520, 529 A.2d 956, 959 (1987)] (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 902 (2d Cir.1981)). We approve this distinction.
620 So.2d at 1005-06.
As recognized in Marine Midland Bank, N.A. v. Miller, 664 F.2d 899 (2d Cir.1981), which was quoted in Doe, the corporate shield doctrine does not imply that an individual who commits a tort while acting on behalf of his employer should be immune from personal liability; rather, it addresses whether such individual may be sued in a particular forum.
It is undisputed that an individual who commits a tort while acting in his capacity as a corporate officer or employee may be held personally liable....
... [T]here is a dichotomy between the principles governing the personal liability of corporate agents for torts committed in their corporate roles and the principles governing the amenability of such agents to personal jurisdiction solely on the basis of those acts.... [I]f an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual.
Id. at 902 (citations omitted).
In the instant case, it was undisputed that appellants were carrying out their duties on behalf of their corporate employer while they were present in Florida. "The corporate shield doctrine protects corporate agents from being subjected to Florida jurisdiction for acts performed while conducting business in Florida on behalf of a corporation." Oesterle v. Farish, 887 So.2d 412, 415 (Fla. 4th DCA 2004) (refusing to apply corporate shield doctrine because non-resident defendant was alleged to have committed an intentional tort when negotiating a contract on behalf of his corporate employer while present in Florida).[1] The rationale for the rule, i.e., that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his benefit but for the benefit of his employer," is no less applicable because the individual performs those acts that solely benefit his employer while physically present in Florida. Doe, *66 620 So.2d at 1006. Consistent with the reasoning in Doe, appellants did not "personally" do any of the acts which would subject them to personal jurisdiction under Florida's long-arm statute. Consequently, the statutory requirement, the first step of the Venetian Salami inquiry, was not met.
Accordingly, we reverse the order of the trial court and remand this cause with directions to vacate the order denying appellants' motions to quash service of process and dismiss for lack of jurisdiction and to enter an order granting the same. Moreover, we certify to the supreme court the question stated in the special concurrence.
Reversed and remanded.
GROSS, C.J., concurs specially with opinion.
FARMER, J., dissents with opinion.
GROSS, C.J., specially concurring.
I concur in the majority opinion because I believe its holding is truest to the version of the corporate shield doctrine adopted by the Florida Supreme Court in Doe v. Thompson, 620 So.2d 1004 (Fla.1993). However, I agree with Judge Farmer that this case involves something that Doe did notthe allegation here is that the corporate agents actively committed acts of negligence in Florida, while in Doe the defendant was the president of a corporation, who had a residence and office outside of Florida and who was accused of negligence for "failing to take adequate security measures to make [a] store reasonably safe." Id. at 1005.
In Doe, it appears that the Supreme Court adopted a version of the corporate shield doctrine described in Estabrook v. Wetmore, 129 N.H. 520, 529 A.2d 956 (1987) and Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 902 (2d Cir.1981). Doe, 620 So.2d at 1006. This doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." Rice v. Nova Biomedical Corp., 38 F.3d 909, 912 (7th Cir.1994). The "underpinning" of this iteration of the doctrine "is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." Marine Midland, 664 F.2d at 902. "The fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long arm statute." Id. at n. 3.
Other federal circuits have departed from the approach to the fiduciary shield doctrine taken in Marine Midland.[1] For example, the Sixth Circuit has held that
the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of *67 the forum and the reasonably foreseeable consequences of that availment.
Balance Dynamics Corp. v. Schmitt Indus., 204 F.3d 683, 698 (6th Cir.2000); see also Columbia Briargate Co. v. First Nat'l Bank in Dallas, 713 F.2d 1052, 1064 (4th Cir.1983).
Given the disagreement over the proper application of the corporate shield doctrine, and the factual differences between Doe and this case, we certify the following question as being of great public importance:
WHERE AN INDIVIDUAL, NON-RESIDENT DEFENDANT COMMITS NEGLIGENT ACTS IN FLORIDA ON BEHALF OF HIS CORPORATE EMPLOYER, DOES THE CORPORATE SHIELD DOCTRINE OPERATE AS A BAR TO PERSONAL JURISDICTION IN FLORIDA OVER THE INDIVIDUAL DEFENDANT?
FARMER, J., dissenting.
Plaintiffs alleged that while personally present in Florida these non-resident defendants committed negligent acts within this state injuring other persons here. They based jurisdiction over these non-resident actors on the part of the Florida long-arm statute, which specifies:
"Any person, whether or not a citizen or resident of this state, who personally... does any of the acts enumerated in this subsection thereby submits himself... to the jurisdiction of the courts of this state for any cause of action arising from ... committing a tortious act within this state." [e.s.]
§ 48.193(1)(b), Fla. Stat. (2009). Again, plaintiffs alleged precisely these facts in their pleading: while each was present here they acted tortiously and injured plaintiffs.[1]
A brief perusal demonstrates on the face of subsection (1)(b) that it requires actual presence in Florida during which one has committed a tortious act in this state resulting in injury to another person here. In this case, plaintiffs did not allege that defendants committed a negligent act in Florida through, or by reason of, the acts of an agent acting on their behalf in this state. It alleges that defendants themselves were here and acted tortiously within this state. As subsection (1)(b) makes clear, one can be sued here when one himself is personally present in Florida and commits negligence injuring another person here.
In Doe v. Thompson, 620 So.2d 1004 (Fla.1993), the supreme court held that a nonresident corporate agent, who had committed acts outside this state on behalf of the corporation, was not subject to subsection (1)(b), even though the corporation for whom the agent had acted could be sued here. There, defendant's affidavit made clear he had never done anything in Florida and that all his acts on behalf of the corporation were done outside this state. The conduct alleged to support jurisdiction in Doe had been that while carrying out his corporate duties in Texas the agent had caused injury to someone in Florida.
An appellate decision must be understood to be based onand limited tothe particular facts and circumstances on which it was decided.[2] The entire basis *68 for the corporate shield doctrine in Doe is that the corporate official had been outside Florida, acting only on behalf of the corporation, when in Texas he committed the negligent act that injured someone in Florida. The holding is manifestly that because of those circumstances he cannot be personally sued in Florida.
Doe is inapplicable to this case. Here the defendants themselves were personally present in Florida when they committed acts injuring other persons here. Nothing in subsection (1)(b) suggests that a defendant personally acting within Florida and causing injury here is outside our jurisdiction if he was acting for the benefit of another. The complaint alleges that their acts within the state were tortious. They are not being sued for out-of-state conduct traceable to injury in Florida. That is the significant difference between this case and Doe. Reliance on Doe necessarily adds new text to this part of the statute.
The argument is also made here that jurisdiction is lacking because defendants were acting in their capacity as agents. But it is especially well settled that agents are always liable for the torts they commit because:
"[I]t is almost universally held that the existence of a principal and agent relationship is immaterial, the tort liability of the agent not being based upon the existence of any contractual relationship between the agent and a principal but upon the common law obligation that every person must so reasonably act or use that which he or she controls as not to harm another. See 3 AM.JUR.2D, Agency § 309 (1986); RESTATEMENT SECOND OF AGENCY § 343."
Liberty Surplus Ins. Corp. Inc. v. First Indem. Ins. Serv. Inc., 31 So.3d 852, 856 (Fla. 4th DCA 2010); Sussman v. First Fin. Title Co. of Fla., 793 So.2d 1066, 1069 (Fla. 4th DCA 2001). Acting in a representative capacity does not give an agent license to act unreasonably to harm another.
The majority's decision effectively extends the rationale of Doe to hold that even individuals who have personally committed acts within Florida are protected by a corporate shield. Their decision would pardon corporate agents who exceed authority or act in some way the corporation could disown. Absolutely nothing in the statute implies such a dispensation from liability for one's own conduct. I therefore dissent.
NOTES
[1] The court in Doe recognized that there is a fraud or intentional misconduct exception to the corporate shield doctrine. 620 So.2d at 1006 n. 1.
[1] Judge Posner has characterized Marine Midland as "an impaired precedent because it was an interpretation of New York law and New York's highest court later repudiated the entire doctrine" in Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 44-47 (1988). Rice v. Nova Biomedical Corp., 38 F.3d 909, 912 (7th Cir. 1994).
[1] Notably, plaintiffs did not allege they were subject to jurisdiction because they, or their corporate employer, do business in this state.
[2] See Ansin v. Thurston, 101 So.2d 808 (Fla. 1958) ("A conflict of decisions ... must be on a question of law involved and determined, and such that one decision would overrule the other if both were rendered by the same court; in other words, the decisions must be based practically on the same state of facts and announce antagonistic conclusions"); City of Miami Beach v. Prevatt, 97 So.2d 473 (Fla. 1957) (decision of supreme court necessarily based on existing facts); Miller v. Moylan, 72 So.2d 380 (Fla. 1954) (rejecting cited authority because based on "dissimilar facts"); Henderson v. Boose, 142 Fla. 804, 196 So. 671 (1940) (trial court decision must be based on same facts to be within case authority cited).