# Third District Court of Appeal

## State of Florida

Opinion filed March 29, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D16-1858; 3D16-1838; 3D16-1675
Lower Tribunal No. 15-19884

_____

**Damon Phelan, et al.,**
Appellants,

vs.

**Michael Kevin Lawhon, et al.,**
Appellees.

Appeals from a non-final order from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Mound Cotton Wollan & Greengrass and Lionel F. Rivera and Brooke D. Oransky (Fort Lauderdale) and Barry Temkin (New York, NY); Akerman LLP and Kathy M. Klock and Jonathan B. Butler (West Palm Beach); Greensfelder, Hemker & Gale and Donald D. McBride and David W. Ybarra and Garrett C. Reuter, Jr. (St. Louis, MO), for appellants.

Kozyak Tropin & Throckmorton and Charles W. Throckmorton and Vincent Alexander; Shapiro, Blasi, Wasserman and Aram C. Bloom (Boca Raton), for appellees.

Before WELLS, ROTHENBERG and SALTER, JJ.

SALTER, J.

These three consolidated appeals were commenced by fourteen of twenty defendants from a non-final circuit court order denying their motions to dismiss for lack of personal jurisdiction. We affirm the order of denial as to twelve of those defendants, reversing the order only as to two of the defendants, Marc R. Chenot and Kevin J. Haberberger.

I.    The Third Amended Complaint

The Third Amended Complaint, referred to in this opinion as the "Complaint," was brought by three plaintiffs (appellees here) against the fourteen defendant/appellees and six other Florida-resident or Florida-connected defendants. The underlying dispute involves individuals and companies alleged to have: severed affiliations with plaintiff/appellee The Northwestern Mutual Life Insurance Company ("NML"); wrongfully used confidential information regarding NML insureds and policies; "twisted" or "churned"[1] NML's insureds and policies; tortiously interfered with the appellees' advantageous business relationships; and

---

[1]    "Twisting" refers generally to "the making of misrepresentations or misstatements of facts or incomplete comparisons of policies for the purpose of inducing the surrender of insurance in one company and the taking of insurance in another." Steven Plitt et al., Couch on Ins. §55:21 (3d ed. Dec. 2016). "Churning" describes acts of "[e]ngaging an account in excessive trading for the purpose of producing commissions rather than acting on behalf of one's client." Hayden, Stone, Inc. v. Brown, 218 So. 2d 230, 235 (Fla. 4th DCA 1969). The terms are defined more particularly, and such conduct is proscribed, in sections 626.9541(1)(*l*) (twisting) and 626.9541(1)(aa) (churning), Florida Statutes (2016).

conspired as a group to engage in those activities in order to derive commissions from their new relationships with The Massachusetts Mutual Life Insurance Company ("Mass Mutual").[2] The other two plaintiffs are Michael Kevin Lawhon ("Lawhon"), an NML general agent individually and through South Florida Group, LLC, a Florida LLC owned and operated by Lawhon.

The Complaint includes 230 numbered paragraphs in 92 pages of detailed allegations, sixteen separate causes of action, and 36 numbered exhibits comprising another 450 pages. The appellants filed motions to dismiss for lack of personal jurisdiction, together with affidavits in support of those motions.[3] In addition, jurisdictional discovery was taken, and each side relies on answers to interrogatories, documents, and deposition testimony to support its position here.

## II.    Denial of the Motions; Three Separate Appeals

In July 2016, the trial court entered a ten-page omnibus order denying the various motions to dismiss the Complaint for lack of personal jurisdiction. Three groups, a total of fourteen defendants, filed separate appeals and are represented by separate counsel in these consolidated appeals.

### A.    Case No. 3D16-1675

---

[2] Mass Mutual itself is not a defendant.

[3] The defendants filed motions to dismiss the Complaint for failure to state a cause of action, all of which were denied in a separate order. The order denying those motions is not presently appealable.

The ten appellees in this appeal (the "Missouri-Illinois Defendants"),[4] were agents and field managers for NML working primarily in St. Louis, Missouri, and nearby areas of Missouri and Illinois. Each of them left NML in 2014 and became agents of Mass Mutual working under the direction of former NML general agent, and later Mass Mutual general agent for the St. Louis area, appellee Damon Phelan ("Phelan"). Phelan (who has appealed individually in Case No. 3D16-1858, as detailed below) left NML and became the Mass Mutual general agent for that area in August 2013. The Complaint alleges that Phelan was responsible as general agent for reviewing the suitability and marketing of the Mass Mutual policies and products recommended by the Missouri-Illinois Defendants.

Each of the Missouri-Illinois Defendants, except Chenot and Haberberger, became members of defendant Visionary Wealth Advisors, LLC ("VWA"), a Delaware limited liability company authorized to conduct business in Florida. VWA's officers and managing members include defendants and appellees (in consolidated Case No. 3D16-1838, also detailed below) Brett G. Gilliland ("Gilliland") and Timothy G. Hammett ("Hammett"). The Complaint alleges that

---

[4] Marc R. Chenot; Daniel W. Clinard; Richard M. Collop; Jeffrey C. Fox; Kevin J. Haberberger; Ronald G. Jones, Jr.; Tyler Niermann; Joseph Reiniger; Mia Vieregge; and Scott Vieregge. Haberberger's contract with Mass Mutual was terminated in March 2016, six months after the plaintiffs filed their circuit court lawsuit in Miami.

VWA regularly conducts substantial business operations out of offices in Miami, St. Louis, and Edwardsville, Illinois. Two Florida-resident defendants, who did not seek dismissal for lack of personal jurisdiction and thus are not appellees here, Ricardo J. Ludert ("Ludert") and Charles R. Downs, Jr. ("Downs"), also conduct VWA business from their office in Miami.

The Complaint alleges that Downs, also an NML agent for many years, became a co-general agent for Mass Mutual in Miami shortly after Phelan and other defendants left NML. The Complaint also alleges that Downs breached NML regulations applicable to him under his contract by copying, electronically and physically, trade secrets of NML regarding hundreds of NML policyholders, before his July 2014 termination. The Complaint further alleges that Missouri-Illinois Defendants Clinard, Fox, Jones, and Scott Vieregge also copied and stole electronic and physical copies of such trade secrets before their respective termination dates with NML.

### B. Case No. 3D16-1838

Three defendants are the appellees in this consolidated appeal—Gilliland, Hammett, and Gilliland Hammett Capital Management, LLC ("GHCM"). Gilliland, a resident of Illinois, is the chief executive officer and a managing member of VWA, which does business in Florida, as already noted. Hammett, a

resident of Missouri, is the president and a managing member of VWA. GHCM is a Missouri LLC and is also a managing member of VWA.

Gilliland, Hammett, and GHCM are alleged to have done business in Florida and engaged in a conspiracy with Florida-based defendants including VWA. Gilliland and Hammett were NML agents who terminated their contracts and left NML within months after Phelan and the Miami-based defendants did the same, with each becoming agents for Mass Mutual and Phelan. The Complaint alleges that Hammett also improperly acquired from NML, and disseminated, trade secret and other confidential data in order to further his wrongful activities as a Mass Mutual agent.

C.    Case No. 3D16-1858

Phelan is the only appellee in this third of the three consolidated appeals. The Complaint alleges that he was an NML agent and general agent for 23 years, until mid-2013; that he left NML and became a general agent for Mass Mutual in August 2013; that he recruited NML agents in 2014 to join Mass Mutual for his own benefit; that Florida resident defendant Downs was one such agent, with Downs' improper sales of Mass Mutual products for replacement of NML insurance products approved by Phelan; and that Phelan also established a satellite Mass Mutual agency in Tallahassee, Florida.[5]

_____

[5] One of Phelan's two affidavits in support of dismissal of the Complaint disputed that he (individually) has a place of business in Florida, but he conceded that "one

6

III.    Analysis

A.    Standard of Review and Issues for Review

Our review of the order denying the non-Florida residents' motions to dismiss for lack of jurisdiction is de novo.  Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002).  We consider two inquiries in each of the consolidated cases. The first is governed by Florida's long-arm statute, section 48.193, Florida Statutes (2015), and the process detailed in Venetian Salami v. Parthenais, 554 So. 2d 499 (Fla. 1989).  "Because this case arises from a motion to dismiss for lack of personal jurisdiction, we derive the facts from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss."  Wendt, 822 So. 2d at 1254.  The second inquiry is also described in Venetian Salami and Wendt, but addresses the requirement that the defendants' activities satisfy the "minimum contacts" test under the United States Constitution.

Importantly, the Supreme Court of Florida has held that "telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b)[6] if the alleged cause of action arises from

_____

of the MassMutual [sic] agents currently under my supervision is located in Tallahassee and I maintain a Florida securities license so that I can supervise that agent . . . ."

[6] Section 48.193(1)(b) has since been renumbered section 48.193(1)(a)2, Florida Statutes (2015).

7

the communications," Wendt, 822 So. 2d at 1260, and that "[t]here is no question that physical presence is not necessarily required to satisfy the constitutionally mandated requirement of minimum contacts," Id. at 1257-58.

In addressing allegations that a non-resident defendant committed a tort in Florida through acts and communications directed into the state from outside Florida, "[t]he appropriate inquiry is whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred." Machtinger v. Inertial Airline Servs., Inc., 937 So. 2d 730, 734 (Fla. 3d DCA 2006).

B.    Conspiracy

The allegations and Counts of the Complaint relating to a conspiracy among the Florida defendants and the non-resident defendants are dispositive in the present case. The trial court's closely-reasoned order aptly summarized the matter:

> The heart of this matter is the alleged civil conspiracy to commit tortious acts which has targeted and damaged the Plaintiffs and injured clients within the State of Florida. Pursuant to the allegations, the conspiracy's main focus was the recruitment of insurance sales agents and the improper replacement of insurance policies.

A series of Florida cases has found personal jurisdiction over non-resident defendants engaged in conspiracies that include tortious or statutorily-prohibited actions as against Florida residents. In Execu-Tech Business Systems, Inc. v. New Oji Paper Co. Ltd., 752 So. 2d 582 (Fla. 2002), non-Florida residents having no actual physical presence in Florida were haled into a Florida court based on

allegations that they conspired to fix wholesale and retail prices of thermal fax paper throughout the United States, including Florida, in violation of the Florida Deceptive and Unfair Trade Practices Act. In Machtinger, a non-resident defendant was alleged to have directed fraudulent misrepresentations to the plaintiff's officers in Florida, and to have conspired with other non-resident defendants in doing so. This Court found personal jurisdiction over the defendant under the long-arm statute and minimum contacts based on Wendt. Machtinger, 937 So. 2d at 736 ("Directing a conspiracy toward Florida establishes sufficient minimum contacts to satisfy due process. Wendt, 822 So. 2d at 1259.").

Similarly, in NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444 (Fla. 4th DCA 2012), it was alleged (as here) that a non-resident defendant participated in a conspiracy with corporate officers based in Florida, in breach of the officers' fiduciary duties, to (a) obtain and use confidential information, and (b) hire away key corporate employees, in order to compete with the corporation. The Fourth District reversed an order dismissing the complaint for lack of personal jurisdiction:

> Moreover, if a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts toward the plaintiff, and if the plaintiff has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute.

Id. at 448 (emphasis provided).

The allegations in the Complaint regarding conspiracy meet the requirements of Florida law as to all but two of the Missouri-Illinois Defendants, Chenot and Haberberger. "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). The alleged conspiracy must demonstrate "an actionable underlying tort or wrong," and that independent tort or wrong must "constitute a cause of action if the wrong were done by one person." Id. (quoting Blatt v. Green, Rose, Kahn & Piotrkowski, 456 So. 2d 949, 951 (Fla. 3d DCA 1984)).

In the present case, the allegations in the Complaint include evidence that the Florida-based defendants joined Phelan's migration from NML to Mass Mutual, along with Gilliland, Hammett, and GHCM; and that all appellees except Phelan, Chenot, and Haberberger were officers, managing members, or members of VWA. The plaintiffs alleged that VWA was used as an ostensibly independent advisor to recommend Mass Mutual insurance and investment products to replace NML products in violation of applicable regulatory prohibitions against twisting and churning.

The Complaint also alleges that Phelan signed another NML agent based in Florida, non-party Tyler Huston, as a Mass Mutual agent under Phelan's supervision. Following the recruitments of NML agents on behalf of Mass Mutual, reliance on VWA, use of improperly removed trade secrets regarding NML insureds and their policies, and wrongful interference with NML insureds and business, the Complaint alleges extraordinary financial success by the collaborators and co-conspirators. The Complaint includes affidavits and statistical compilations showing volumes of replacement activity (NML products replaced with Mass Mutual policies, with the defendants in their new Mass Mutual roles) that far exceed historical Mass Mutual percentages. Indeed, Mass Mutual's own compliance monitoring through replacement exception reports (disproportionate replacement volume versus new-policy sales) picked up the anomalies.[7]

C.    Appellants Chenot and Haberberger

The issue is only close with respect to two of the Missouri-Illinois Defendants in Case No. 3D16-1675, Chenot and Haberberger. Neither is affiliated

_____

[7] Because pretrial discovery has been limited to jurisdictional issues, the plaintiff/appellees have not yet had an opportunity to delve into many particulars regarding the replacement activity. The disproportionate volume of replacement activity, however, is circumstantial evidence that corroborates the possession of confidential information and concerted activity by the defendants. "The existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence." Donofrio v. Matassini, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987).

with Florida-based VWA, according to the record before us, and neither is specifically alleged to have been in active concert with other defendants in the wider conspiracy that included actors, trade secrets, or policyholders in Florida. For example, the allegations and exhibits relating to Chenot and Haberberger list replacement policies in Illinois, Missouri, Arkansas, Georgia, and Alabama, but none in Florida.

Arguably, though without expressing any opinion as to the law of those jurisdictions, there might be local claims of tortious interference or regulatory violations as to Chenot or Haberberger outside Florida. The allegations in the Complaint, however, do not specifically link those two defendants to the multi-state conspiracy (and to the resident and non-resident co-conspirators) relied upon by the trial court to uphold personal jurisdiction in the present Florida lawsuit. Accordingly, in Case No. 3D16-1675, we reverse the non-final order under review insofar as it denies dismissal for lack of personal jurisdiction as to appellants Chenot and Haberberger.

### D. Corporate Shield

The final issue warranting consideration is the argument by Gilliland, Hammett, and GHCM (Case No. 3D16-1838) that "Florida's corporate shield doctrine prevents a finding that personal jurisdiction exists in Florida" as to each of them, citing Doe v. Thompson, 620 So. 2d 1004, 1006 (Fla. 1993). The argument

fails, however, based on the exception identified in <u>Doe</u> itself, as reiterated in a more recent opinion by the Supreme Court of Florida:

> An exception to the corporate shield doctrine limits the scope of the doctrine's protection. Specifically, a corporate officer who commits fraud or other intentional misconduct outside of Florida may be subject to personal jurisdiction. <u>See</u> <u>Doe</u>, 620 So. 2d at 1006; <u>Oesterle v. Farish</u>, 887 So. 2d 412 (Fla. 4th DCA 2004).

<u>Kitroser v. Hurt</u>, 85 So. 3d 1084, 1088 n.3 (Fla. 2012).

Gilliland, Hammett, and GHCM may not claim the benefit of the corporate shield doctrine, in light of the unrebutted allegations of intentional misconduct against each of them.

IV.   <u>Conclusion</u>

Regarding Case No. 3D16-1675, we affirm the trial court's Omnibus Order Denying Defendants' Various Motions to Dismiss the Third Amended Complaint for Lack of Jurisdiction ("Order") as to all of the appellants except Marc R. Chenot and Kevin J. Haberberger. As to those two appellants, we direct the trial court to dismiss Chenot and Haberberger for lack of personal jurisdiction.

Regarding Case No. 3D16-1638, we affirm the Order in all respects and as to all three appellants: Brett G. Gilliland, Timothy G. Hammett, and Gilliland Hammett Capital Management, LLC. Regarding Case No. 3D16-1858, we affirm the Order in all respects as to appellant Damon Phelan.

Affirmed in part; reversed in part.